636 S.E.2d 316 (2006)
In the Matter of S.N., A Minor Child.
No. COA06-127.
Court of Appeals of North Carolina.
November 7, 2006.
J. Edward Yeager, Jr., Charlotte, for petitioner-appellee.
Susan J. Hall, Fayetteville, for respondent-appellant father.
Nelson Mullins Riley & Scarborough, LLP, by Catharine W. Cummer, Raleigh, for guardian ad litem.
No brief filed on behalf of respondent mother.
GEER, Judge.
The respondent father, D.N., appeals from an order of the district court terminating his parental rights with respect to his minor daughter, S.N. On appeal, the respondent father challenges the admission of testimony of a social worker, arguing that it constituted inadmissible hearsay, and contends that the evidence did not support the trial court's conclusion that grounds for termination existed under N.C. Gen.Stat. § 7B-1111 (2005). We hold that the testimony was admissible to show the respondent father's knowledge of the terms of his case plan with petitioner and that the trial court did not err in concluding that the respondent father had willfully left his daughter in foster care for more than 12 months without making reasonable progress under the circumstances to correct the conditions that led to his daughter's removal from his custody.
The record contains competent evidence indicating that the child was removed from her parents' custody because she tested positive for marijuana at birth and that the respondent father was told that if he continued to reside with someone with an untreated substance abuse problem, his home would not be considered appropriate. Nevertheless, the respondent father chose to live with the mother despite her refusal to obtain substance abuse treatment or even acknowledge the need for such treatment. The evidence and the trial court's findings amply support the court's conclusion that grounds existed under N.C. Gen.Stat. § 7B-1111(a)(2) to terminate the father's parental rights. We, accordingly, affirm the trial court's order terminating the respondent father's parental rights.

Facts
S.N.'s mother had four children prior to S.N. Those children were all adjudicated to be neglected as a result of the mother's substance abuse and allegations of domestic violence. During the time Mecklenburg County's Division of Youth and Family Services ("YFS") was involved with these four children, the mother gave birth to S.N.S.N. tested positive for marijuana at birth, and the mother admitted to using marijuana while breast feeding the child.
YFS was granted custody of the child on 12 November 2003 because of the mother's continuing drug use and failure to adhere to her prior case plan. S.N. was initially placed with her paternal grandmother, but subsequently was placed in the custody of Lutheran Family Services. Her parents were each ordered to pay $50.00 per month in child support.
On 23 January 2004, the district court adjudicated the child to be neglected and dependent as to the mother and dependent as to the respondent father. The court found that the mother had failed to comply with her case plan for her prior four children that required completion of substance abuse treatment, parenting classes, and domestic violence counseling. With respect to the respondent father, the court found that he was aware of the mother's involvement with YFS, and, although he was working and wanted to provide placement for the child, he still resided with the mother.
Following a dispositional hearing on 10 February 2004, the court entered its order on 19 February 2004, finding that returning S.N. to the home was contrary to her best *318 interests. At the hearing, YFS submitted case plans for the parents. The mother was required to obtain a substance abuse assessment, to follow all recommendations resulting from the assessment, to actively seek employment, to complete parenting classes, to attend weekly visitation with the child, and to attend domestic violence counseling. The respondent father was required to obtain a substance abuse assessment and to follow all recommendations resulting from that assessment, to maintain stable employment sufficient to provide adequate income to meet his daughter's basic needs, to maintain an adequate residence for his daughter, to attend parenting classes, and to attend weekly visitation. The permanent plan for the child was a concurrent goal of either reunification or adoption.
On 9 March 2004, the mother's parental rights to S.N.'s four siblings were terminated based primarily on the mother's failure to adhere to her case plan, including her failure to participate in domestic violence and substance abuse treatment, to obtain suitable housing for her children, and to pay any amount toward the cost of her children's care while they were in foster care. It does not appear from the record whether the mother appealed the termination of her parental rights to the four children.
On 2 August 2004, S.N. was returned to her parents' home for a trial placement. One week later, however, the mother tested positive for marijuana, and, on 10 August 2004, the child was again removed from the home. During the removal, the child appeared to have been left home alone, and the home smelled strongly of marijuana. The mother claimed she tested positive due to riding home with a co-worker who smoked marijuana. On 19 August 2004, the mother was supposed to submit to another drug test, but, after it was determined that she had manipulated the urine screen, she refused to submit to a second test.
In a court summary prepared 7 September 2004, YFS reported that "[i]t has been discussed with [the respondent father] that part of providing care for S.N. is providing an appropriate environment for her care. It has been explained to him that even if he is 100% compliant with his case plan but still maintaining a relationship with [the mother] and she is not compliant with her case plan he cannot be considered as an appropriate caretaker." As of this date, the respondent father had not paid any child support and was in arrears in the amount of $450.00, while the mother had arrears of $314.00.
YFS recommended that the child's permanent plan be changed to adoption. Following a permanency planning hearing on 16 November 2004, the trial court entered an order on 2 December 2004 finding that it was not possible to return the child to the parents' home within the next six months because the mother continued to struggle with substance abuse, and "[t]he father continues to reside with the mother and has not evidenced any ability to independently care for the child if the mother is not appropriate." Based on its findings, the court changed the permanent plan for the child to termination of parental rights and adoption.
Following a hearing on 2 August and 1 September 2005, the trial court entered an order on 12 September 2005 terminating the parental rights of both of S.N.'s parents. The court concluded that the parents had (1) neglected the child, (2) willfully left the child in foster care for more than 12 months without making reasonable progress in correcting the conditions that led to the removal of the child, and (3) failed to pay a reasonable portion of the cost of the care of the child. With respect to the mother, the court also concluded that her parental rights had been involuntarily terminated as to another child, and she lacked the ability or willingness to establish a safe home. The court then concluded that the best interests of the child would be served by termination of the parental rights of both her mother and father. The respondent father timely appealed this order.

Discussion
A termination of parental rights proceeding is conducted in two phases: (1) an adjudication phase that is governed by N.C. Gen.Stat. § 7B-1109 (2005) and (2) a disposition phase that is governed by N.C. Gen.Stat. § 7B-1110 (2005). In re Blackburn, 142 N.C.App. 607, 610, 543 S.E.2d 906, 908 (2001). During the adjudication stage, petitioner *319 has the burden of proving by clear, cogent, and convincing evidence the existence of one or more of the statutory grounds for termination set forth in N.C. Gen.Stat. § 7B-1111. On appeal, this Court determines whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings of fact support the conclusions of law. In re Huff, 140 N.C.App. 288, 291, 536 S.E.2d 838, 840 (2000), appeal dismissed and disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001).
If petitioner meets its burden of proving that grounds for termination exist, the trial court then moves to the disposition phase and must consider whether termination is in the best interests of the child. N.C. Gen.Stat. § 7B-1110(a). The trial court may terminate parental rights upon a finding that it would be in the best interests of the child to do so. Blackburn, 142 N.C.App. at 613, 543 S.E.2d at 910. We review the trial court's decision regarding the child's best interests for an abuse of discretion. In re Nesbitt, 147 N.C.App. 349, 352, 555 S.E.2d 659, 662 (2001).

I.
The respondent father first argues that the trial court erred by admitting testimony by a social worker regarding statements purportedly made by the respondent father's drug counselor following his discharge from his substance abuse program. The father points to the following testimony:
Q. [By guardian ad litem counsel:] Ms. McNiel, did you attend with [respondent] his discharge staffing from the SOAR program in June of 2004?
A. [By Ms. McNiel:] Yes.
Q. And did you talk with [respondent] about what he was going to need to do as part of his discharge plan?
A. Yes.
Q. Did you explain to him that he would need to attend three meetings per week, continue his 12-step work, maintain his sponsor, stay clean[,] and once a month attend couples['] counseling with [S.N.'s mother]?
A. Yes, and that came from his counselor.

(Emphasis added.) Respondent's subsequent objection was overruled. On appeal, respondent contends the social worker's testimony as to what respondent's drug counselor may have said was inadmissible hearsay.
"`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.R. Evid. 801(c). If a statement is offered for any other purpose, it is not hearsay. State v. Dickens, 346 N.C. 26, 46, 484 S.E.2d 553, 564 (1997). Here, respondent has failed to establish that an out-of-court statement was offered for the truth of the matter asserted. Instead, the social worker was testifying as to the terms of respondent's case plan and respondent's knowledge of those terms.
In any event, even if the social worker's testimony is construed as repeating what the counselor said regarding respondent's substance abuse treatment plan, respondent has failed to explain how he was prejudiced by the testimony. See State v. Locklear, 349 N.C. 118, 149, 505 S.E.2d 277, 295 (1998) (the appellant "has the burden of showing error and that there was a reasonable possibility that a different result would have been reached at trial if such error had not occurred"), cert. denied, 526 U.S. 1075, 119 S.Ct. 1475, 143 L.Ed.2d 559 (1999). Nor has respondent demonstrated that the trial court relied upon any hearsay testimony. See Huff, 140 N.C.App. at 301, 536 S.E.2d at 846 (in a bench trial, appellant must show that trial court relied on incompetent evidence in making its findings). This assignment of error is, therefore, overruled.

II
We next consider respondent's contention that the trial court erred when it concluded that grounds for termination existed under N.C. Gen.Stat. § 7B-1111(a)(2). Under this statute, a trial court may terminate a respondent's parental rights when "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to *320 the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2).
Respondent argues that "he had completed his entire case plan and that he had not wilfully left [S.N.] in Petitioner's custody in that he had made reasonable progress under the circumstances which led to the removal of [S.N.]." We hold that the trial court's conclusion that this ground existed is supported by its findings of fact and that those findings of fact are, in turn, based on competent evidence.
In concluding that the respondent father had willfully failed to make "reasonable progress under the circumstances [toward] . . . correcting those conditions which led to the removal of the juvenile," N.C. Gen.Stat. § 7B-1111(a)(2), the trial court found that the respondent father had complied with a number of the elements of his case plan. With respect to the requirement that he maintain appropriate housing, however, the court found:
15. The respondent father also maintained housing and employment and completed the FIRST Program. However, the respondent father maintained housing by living with the respondent mother. He has never obtained independent housing such that he could care for the minor child despite the fact that the respondent mother had tested positive for marijuana and not re-engaged in substance abuse treatment.
16. [The respondent father] testified at the termination proceeding that it was not an element of his case plan. But [the respondent father] was told repeatedly during the underlying juvenile case that if he resided with someone with an untreated substance abuse problem his home would not be appropriate regardless of his case plan progress.
17. The father admits knowing that the child was removed from the trial home placement due to the mother's positive drug screen. He furthermore admits to knowing that the mother has not re-engaged in treatment. Despite that, however, the father has made no efforts to establish a safe, drug-free home for the child.
. . . .
20. At the termination proceeding the parents demonstrated that they had made some efforts. They attended some meetings. The mother has gone to individual counseling through the SAIL program. And the parents have maintained employment and housing. This pattern of behavior is similar to the period before the other children were removed from the mother's custody.
21. The court however cannot find that the parents have made substantial progress. Furthermore, in that the respondent mother is not currently engaged in treatment or even acknowledging the need for treatment the court finds that the risk of relapse and repetition of neglect is substantial.
Further, the trial court found that the respondent father was not in compliance with the "minimal child support order."
The respondent father assigned error to these findings, arguing that they were not supported by competent evidence. In particular, he contends that "[p]etitioner never made a condition of [the father's] written case plan that he separate from [the mother]." (Emphasis added.) The trial court, however, found that the father "was told repeatedly during the underlying juvenile case that if he resided with someone with an untreated substance abuse problem his home would not be appropriate regardless of his case plan progress." (Emphasis added.) Ample evidence exists in the record to support this finding.
At trial, respondent himself testified as follows under cross-examination by the guardian ad litem attorney:
Q. Do you recall Ms. McNiel saying to you that even if you are 100 percent compliant with your case plan but still maintaining a relationship with [S.N.'s mother] *321 and she is not compliant with her case plan you cannot be considered as an appropriate caretaker?
A. I don't recall that.
. . . .
Q. So that was not discussed with you on November 12th, 2003 when we came to court for the first time that [S.N.] was placed with your mother?
A. That's trueyeah, I'm guessing thatI'm guessing I must have forgot that.

. . . .
Q. . . . And isn't it true that Ms. McNiel said to you, one of the things you can do is set up your own household to provide care for [S.N.]?
A. Well, yeah, she did when you put it that way, yes.

(Emphases added.) Likewise, the record contains a letter from DSS to respondent stating that, "if one of you [(S.N.'s parents)] is not in compliance with your case plan and you remain together as a couple that will impact the decision regarding S.N.'s placement."
To the extent that respondent is contending that the trial court may look only at the conditions contained in a written case plan in deciding, under N.C. Gen.Stat. § 7B-1111(a)(2), whether a lack of reasonable progress has been made, respondent has cited no authority to support that position. The statute does not refer to a written case plan, which is simply one means of documenting what a parent needs to do. Indeed, the plain language of the statute focuses on whether the parent has made "reasonable progress" toward "correcting those conditions which led to the removal of the juvenile" from the parents' custody. N.C. Gen. Stat. § 7B-1111(a)(2). Here, the child was removed because of the mother's drug usage. If the child were returned to her father's custody, the conditions that led to the original removal of the child would not have been corrected because the father is still residing with the mother, and the mother's substance abuse is still untreated.
In short, although respondent may have made some progress toward his case plan, he did nothing to remedy the fact that he was maintaining a home with S.N.'s mother that rendered him ineligible to receive custody. The respondent father effectively chose S.N.'s mother over S.N. See Huff, 140 N.C.App. at 299, 536 S.E.2d at 845 ("[W]here a mother chooses to marry a man who has previously abused her child, there is obviously an increased likelihood that the child will suffer further harm if parental rights are not terminated."); In re Nolen, 117 N.C.App. 693, 699, 453 S.E.2d 220, 224 (1995) ("A finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children."). Respondent makes no argumentand we can discern no reasonwhy he could not have established a home separate and apart from S.N.'s mother and thereby remedied the conditions that led to S.N.'s removal. See In re McMillon, 143 N.C.App. 402, 410, 546 S.E.2d 169, 175 ("Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort."), disc. review denied, 354 N.C. 218, 554 S.E.2d 341 (2001).
We, therefore, conclude that the trial court's determination that respondent willfully failed to make reasonable progress toward correcting the conditions that led to S.N.'s removal was supported by clear, cogent, and convincing evidence. "Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground[s] . . . found by the trial court." In re B.S.D.S., 163 N.C.App. 540, 546, 594 S.E.2d 89, 93-94 (2004).
As YFS met its burden of proving that at least one statutory ground for termination existed, the trial court had discretion to terminate parental rights upon a finding that it would be in the best interests of S.N. to do so. Blackburn, 142 N.C.App. at 613, 543 S.E.2d at 910. Here, the trial court did indeed find termination would be in S.N.'s best interests, and, given respondent's ongoing refusal to live separate and apart from S.N.'s mother, who suffered from persistent untreated substance abuse problems, we see nothing manifestly unreasonable about this decision. Compare, e.g., Bost v. Van Nortwick, 117 N.C.App. 1, 8-9, 449 S.E.2d 911, *322 915 (1994) (trial court abused its discretion when it terminated parental rights solely because children were financially better off in current foster home), appeal dismissed, 340 N.C. 109, 458 S.E.2d 183 (1995).
Affirmed.
Judges CALABRIA and JACKSON concur.