IN THE MATTER OF: D.A.A. and A.M.F.
No. COA09-863
Court of Appeals of North Carolina
Filed November 17, 2009
Virginia R. Hager, for petitioner-appellee.
Lisa Skinner Lefler, for respondent-appellant mother.
Lucas & Ellis, PLLC, by Anna S. Lucas, for respondent-appellant father.
Pamela Newell Williams, for Guardian ad Litem.
ERVIN, Judge.
Amanda H. (Respondent Mother) and Manuel F. (Respondent Father) (collectively, Respondent Parents), appeal from orders[1] terminating their parental rights to D.A.A. (David) and A.M.F (Ava).[2] After careful consideration of the record in light of the applicable law, we affirm the trial court's orders.
On 8 March 2006, the New Hanover County Department of Social Services (DSS) filed a petition alleging that David and Ava were neglected juveniles after Respondent Mother tested positive for cocaine. According to DSS, Respondent Mother had recently moved to New Hanover County from Brunswick County, where the Brunswick County Department of Social Services had attempted to help her address her substance abuse problems. DSS asserted that Respondent Mother failed to adequately address her drug-related problems and did not acknowledge that these problems existed. DSS further alleged that David's father was deceased and that Respondent Father was participating in Respondent Mother's substance abuse. Accordingly, a non-secure custody order was issued, resulting in the placement of both David and Ava in DSS custody.
On 13 September 2006, nunc pro tunc to 4 May 2006, the Court adjudicated David and Ava neglected juveniles based on stipulations by Respondent Parents. In the dispositional portion of its order, the court ordered Respondent Mother to attend substance abuse treatment and required both Respondent Parents to obtain stable housing and employment. The court further authorized DSS, in the event that Respondent Father obtained "appropriate, independent housing," to place the children with him.
The court held a review hearing on 24 August 2006. In the order entered as a result of that hearing, the court found as fact that Respondent Father had established independent housing for himself and Respondent Mother, which was "adequate for the family once reunited." However, the court also found that Respondent Mother continued to have substance abuse issues and had tested positive on two recent drug screens. The court noted that Respondent Mother had "initiated substance abuse treatment[,]" and Respondent Father had "committed" to attending treatment sessions with Respondent Mother. The court ordered Respondent Parents to "address the issues outlined in their Family Services Case Plan" and continued custody of David and Ava with DSS.
Another review hearing was held on 8 February 2007. In the order entered following that hearing, the court found that Respondent Mother, after initially seeming to make progress towards addressing her substance abuse issues, had relapsed and tested positive for cocaine. The court also found that Respondent Mother had stopped participating in substance abuse treatment. On the other hand, Respondent Father had established independent housing and attended anger management and domestic violence counseling. The court noted, however, that Respondent Father's "future is somewhat uncertain in that he faces felony charges and is an undocumented person." The court concluded that return of the juveniles to Respondent Parents in the foreseeable future was unlikely, that returning the juveniles to Respondent Parents would be contrary to the children's best interests, and that DSS should cease reunification efforts.
A permanency planning hearing was held on 28 June 2007. At the conclusion of that hearing, the court found that Respondent Mother was incarcerated and that, upon her release, she intended to "remain separate and apart from [Respondent Father];" "that she is committed to living a substance free lifestyle;" and that she "would like to maintain a relationship with her children." According to the court, Respondent Father remained interested in regaining custody of his children. However, DSS and the guardian ad litem contended that it was in the best interests of the juveniles that their foster parent, Kirsten Joseph, who filed the petition that led to the present proceeding (Petitioner), be made their guardian and that the permanent plan for the juveniles be changed to guardianship with the Petitioner. Accordingly, the court appointed Petitioner as the juveniles' guardian. The court provided for supervised visitation between the juveniles and the Respondent Mother contingent upon the latter providing a negative drug screen. The court also ordered that Respondent Father be afforded supervised visitation at the Petitioner's discretion contingent upon proper notice and negative drug screens.
On 7 April 2008, Petitioner filed petitions seeking the termination of Respondent Parents' parental rights pursuant to the authority granted by N.C. Gen. Stat. §7B-1103(a)(2). In her petition, Petitioner alleged three grounds for termination: (1) that Respondent Parents had neglected the juveniles within the meaning of N.C. Gen. Stat. § 7B-101(15), so that their parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(1); (2) that Respondent Parents had willfully left the juveniles in foster care or placement outside the home for more than twelve months without showing that reasonable progress under the circumstances had been made in correcting the conditions that led to the juveniles' removal, so that their parental rights were subject to termination pursuant to 7B-1111(a)(2); and (3) that Respondent Parents were incapable of providing for the proper care and supervision of the juveniles, so that the juveniles were dependent juveniles as defined in N.C. Gen. Stat. § 7B-101(9), and there was a reasonable probability that such incapability would continue for the foreseeable future, so that their parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B1-111(a)(6). According to Petitioner, she wished to adopt the juveniles, making the termination of Respondent Parents' parental rights in the children's best interests so that this result could be achieved.
The trial court held hearings on the petitions to terminate Respondent Parents' parental rights on 25 August 2008, 6 October 2008, 8 and 10 December 2008, and 9 January 2009. In the termination orders entered at the end of these proceedings, the trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2) to terminate Respondent Parents' parental rights in David and Ava and that it was in the juveniles' best interest that Respondent Parents' parental rights be terminated. Accordingly, on 4 March 2009, nunc pro tunc to 9 January 2009, the trial court terminated Respondent Parents' parental rights. Respondent Parents noted appeals from the trial court's termination orders to this Court.

Respondent Mother's Appeal
Respondent Mother first argues that the trial court erred by concluding that grounds existed to terminate her parental rights in David and Ava. After careful consideration of the evidentiary record in light of the applicable law, we disagree.
N.C. Gen. Stat. § 7B-1111 states the statutory grounds for terminating parental rights. A finding of any one of the separately-enumerated statutory grounds for terminating a parent's parental rights in a child is sufficient to support a termination decision. In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 2333-4 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D., 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) (citing In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000)). Responsibility for determining "`the weight to be given the testimony and the reasonable inferences to be drawn therefrom'" is given the trial court; in the event that "different inference[s] may be drawn from the evidence," the trial court "`alone determines which inferences to draw and which to reject.'" In re McCabe, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003) (quoting In re Hughes, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985).
In this case, the trial court concluded that grounds existed to terminate Respondent Mother's parental rights in both David and Ava pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), which authorizes termination on the grounds of neglect. A "neglected juvenile" is defined as:
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15). As a general proposition, "[a] finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997) (citation omitted). However, "a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." In re Ballard, 311 N.C. 708, 713-14, 319 S.E.2d 227, 231 (1984). In such cases, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." Id. at 715, 319 S.E.2d at 232 (citation omitted).
[Thus, where] there is no evidence of neglect at the time of the termination proceeding . .. parental rights may nonetheless be terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to [his or] her parents.
In re Reyes, 136 N.C. App. 812, 814-15, 526 S.E.2d 499, 501 (2000) (citation omitted).
On appeal, Respondent Mother argues that, while she "had problems in the past," "she had made significant progress in improving her life and readiness to eventually parent her own children" "by the time the termination petition was filed in April 2008." According to Respondent Mother, she "clean drug screen since 31 October 2007;" "a certificate of acknowledgment dated 22 June 2007 that she had participated in a domestic violence support group;" "a certificate of completion for an addiction recovery group [that] she attended while incarcerated;" "[a] certificate of achievement from Coastal Horizons Center dated [] March 2008 s[howing] that she had completed the `Guiding Good Choices' Program;" "cards and letters that she had written to the children;" "cards and letters" that David "had written" to her; and "a letter from her manager at her employer, Pizza Hut[,] stating that she is a valued and honest employee." Given that she had made "significant progress in working the case plan and improving her life," Respondent Mother contends on appeal that "the probability of neglect does not rise to the level that warrants finding grounds to terminate [her] parental rights."
The trial court found in its termination order that Respondent Mother stipulated to the allegations of neglect set forth in the original juvenile petition on 4 May 2006, which were primarily focused upon Respondent Mother's substance abuse problems. Based on Respondent Mother's stipulation, the court found David and Ava to be neglected juveniles. As a result, Respondent Mother was ordered to participate in substance abuse treatment, attend counseling, and submit to random drug screens. In its termination order, the trial court found as a fact that:
34. [Respondent Mother's] drug addiction has persisted from the time the Department took the children into care up until the present time. [Respondent Mother] tested positive for unlawful substances twice after she was served with the Petition to Terminate Parental Rights filed in this matter, and was in an inpatient treatment program up to four days before the first day of the trial of this matter[,] 25 August 2008. [Respondent Mother's] refusal to follow the recommendation of her treatment providers at Hope Valley that she stay at a recovery house following her release indicates that she continues to put her relationship with [Respondent Father] ahead of doing what is best for her children.
35. Petitioner has established by clear, cogent and convincing evidence that [Respondent Mother] neglected the care of the juveniles and further that it is likely that there would be a repetition of neglect if the children were to be placed back in her custody at the time of this hearing (25 August 2008 through 9 January 2009).
Respondent Mother does not contest these findings on appeal as lacking sufficient evidentiary support. Therefore, these findings of fact are deemed to be supported by sufficient evidence and are binding on appeal. N.C.R. App. P. 28(b)(6); see also In re P.M., 169 N.C. App. 423, 424, 610 S.E.2d 403, 404-05 (2005) (concluding respondent had abandoned factual assignments of error when she "failed to specifically argue in her brief that they were unsupported by evidence"). Although the record contains evidence that Respondent Mother had made some progress in addressing her substance abuse problems and that she had complied with some components of her case plan, the trial court clearly found that other evidence which tended to show that Respondent Mother's substance abuse problems persisted until very shortly before the beginning of the hearing, was persuasive and that the persistence of Respondent Mother's substance abuse problems created a risk of further neglect. Under well-established North Carolina law, the trial court had the authority to make this determination given that undisputed record evidence supported its factual findings. As a result, we hold that the trial court's unchallenged findings of fact concerning Respondent Mother's continuing difficulties with substance abuse and the likelihood that the prior neglect that David and Ava had experienced would be repeated in the event that they were returned to her care support its conclusion that Respondent Mother's parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). As a result, the trial court did not err by concluding that Respondent Mother's parental rights were subject to termination on the basis of neglect.
In addition, Respondent Mother argues that the trial court erred by concluding that her parental rights in David and Ava were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). However, since we have concluded that Respondent Mother's parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), we need not address her challenge to the other ground for termination found by the trial court. Taylor, 97 N.C. App. at 64, 387 S.E.2d at 233-34.
Next, we consider Respondent Mother's claim that the trial court erred by concluding that it was in the best interests of the juveniles to terminate her parental rights in David and Ava. In challenging the trial court's dispositional order, Respondent Mother contends that "[n]o one in the entire pendency of this case has ever made an issue of [Respondent Mother's] love for and attachment to her children" and that, since "[s]he has made substantial improvements to her life such that termination is not necessary or in the best interests of the children," "[t]he trial court's order on termination cannot be a result of a reasoned decision" and "should be reversed." We disagree.
"The trial court has discretion, if it finds that at least one of the statutory grounds exists, to terminate parental rights upon a finding that it would be in the [juvenile's] best interests." In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001). The factors that the trial court should consider in determining whether termination of parental rights would be in a juvenile's best interests include: (1) the age of the juvenile; (2) the likelihood of adoption; (3) the impact on the accomplishment of the permanent plan; (4) the bond between the juvenile and the parent; (5) the relationship between the juvenile and a proposed adoptive parent or other permanent placement; and (6) any other relevant consideration. N.C. Gen. Stat. § 7B-1110(a). The court is to take the action "which is in the best interests of the juvenile" in the event that "the interests of the juvenile and those of the juvenile's parents or other persons are in conflict." N.C. Gen. Stat. § 7B-1100(3). Since this portion of a trial court's termination decision is a discretionary one, the trial court's dispositional decision will not be disturbed unless it could not have been the result of rational decision-making. In re J.B., 172 N.C. App. 747, 751, 616 S.E.2d 385, 387, aff'd per curiam, 360 N.C. 165, 622 S.E.2d 495 (2005).
In this case, the trial court's dispositional order indicates that it considered the factors specified in N.C. Gen. Stat. § 7B-1110(a). The trial court made factual findings concerning the age of the juveniles; the fact that Petitioner wished to adopt the juveniles; the nature and extent of the bond between Respondent Mother and the juveniles; and the nature and extent of the bond between Petitioner and the juveniles. The trial court noted that, while the existing guardianship arrangement already provided "a fairly high degree of permanence for the minor children," "[a]doption would provide the children a greater sense of security and belonging[.]" In addition, the trial court found that, during Respondent Mother's visits with David and Ava, "she should have acted toward the children in a way that helped provide them with a sense of security and stability in their placement with Petitioner." Instead, the trial court noted that Respondent Mother told Ava that "I'm your only Mommy" and "did nothing when [Respondent Father] told [David] not to listen to the Petitioner[.]" The trial court stated that Respondent Mother's "primary focus continues to be on herself and doing what she felt necessary so that she could `enjoy' the visits rather than doing what was best for the children." By comparison, the trial court noted that "Petitioner's focus has at all times been the best interests of the children and she has conducted herself accordingly[;] [b]oth children have thrived in her care." As a result, the trial court concluded that the best interests of the juveniles would be served by termination of Respondent Mother's parental rights. After examining the findings of fact made by the trial court with respect to the dispositional issue, we are unable to conclude that any abuse of discretion occurred.
Thus, for the reasons set forth above, we conclude that the trial court did not err in deciding to terminate Respondent Mother's parental rights in David and Ava. As a result, the trial court's termination order as to Respondent Mother is affirmed.

Respondent Father's Appeal
Respondent Father's sole argument on appeal is that the trial court erred by concluding that grounds existed to terminate his parental rights. After carefully reviewing the record and the applicable law, we conclude that the trial court did not err in terminating Respondent Father's parental rights.
In its termination order, the trial court concluded that grounds existed to terminate Respondent Father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). This Court has stated that:
[T]o terminate a parent's rights under [N.C. Gen. Stat.] § 7B-1111(a)(2), the trial court must perform a two part analysis. The trial court must determine by clear, cogent and convincing evidence that a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and, further, that as of the time of the hearing, as demonstrated by clear, cogent and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.
In re O.C., 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396, disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005) (citations omitted). According to Respondent Father, the trial court erred in conducting both parts of the required analysis.
First, Respondent Father contends that the "condition" which led to the removal of the juveniles was Respondent Mother's drug use; that Respondent Mother's drug use occurred during a period of time when he and Respondent Mother were separated; that he was not aware of Respondent Mother's drug use; and that he did not condone Respondent Mother's drug use. For that reason, Respondent Father argues that it is unclear what conditions existed at the time of Ava's removal that he, as opposed to Respondent Mother, needed to correct in order to have her returned to his custody and that, despite the fact it was Respondent Mother's drug use that led to removal of David and Ava, he complied with all the requirements established by the court as a precondition for reunification. More particularly, Respondent Father contends that he obtained independent housing, sought therapy for domestic violence, and obtained a substance abuse assessment. In addition, Respondent Father argues that he assisted Respondent Mother in her attempts towards recovering from substance abuse addiction. For that reason, Respondent Father asserts that he made reasonable progress toward addressing the circumstances that led to Ava's removal and that the trial court erred by reaching a contrary conclusion.
In the opinion In re S.N., 180 N.C. App. 169, 636 S.E.2d 316 (2006), this Court affirmed the trial court's conclusion that grounds for the termination of a father's parental rights existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). The trial court based its conclusion to that effect on the following findings of fact:
15. The respondent father also maintained housing and employment and completed the FIRST Program. However, the respondent father maintained housing by living with the respondent mother. He has never obtained independent housing such that he could care for the minor child despite the fact that the respondent mother had tested positive for marijuana and not re-engaged in substance abuse treatment.
16. [The Respondent Father] testified at the termination proceeding that it was not an element of his case plan. But [the Respondent Father] was told repeatedly during the underlying juvenile case that if he resided with someone with an untreated substance abuse problem his home would not be appropriate regardless of his case plan progress.

17. The father admits knowing that the child was removed from the trial home placement due to the mother's positive drug screen. He furthermore admits to knowing that the mother has not re-engaged in treatment. Despite that, however, the father has made no efforts to establish a safe, drug-free home for the child.
In re S.N., 180 N.C. App. at 176, 636 S.E.2d at 320 (emphasis added). The father in In re S.N. argued on appeal, as Respondent Father argues here, that the trial court erred because he had "completed his entire case plan." Id., 180 N.C. at 175, 636 S.E.2d at 320. This Court disagreed with the father's argument, stating that:
In short, although respondent may have made some progress toward his case plan, he did nothing to remedy the fact that he was maintaining a home with S.N.'s mother that rendered him ineligible to receive custody. The respondent father effectively chose S.N.'s mother over S.N. . . . Respondent makes no argument  and we can discern no reason  why he could not have established a home separate and apart from S.N.'s mother and thereby remedied the conditions that led to S.N.'s removal.
Id., 180 N.C. at 178, 636 S.E.2d at 321. As a result, we affirmed the trial court's conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate Respondent Father's parental rights.
In this case, the trial court found as a fact that:
17. At the review hearing held on 24 August 2006, the Court found as fact that [Respondent Father] "established independent housing for himself and [Respondent Mother] which is adequate for the family once reunited." By that time [Respondent Parents] had resumed living together. From that time forward, [Respondent Father] directed all of his efforts towards supporting [Respondent Mother] in her efforts to have the children returned to her so that they could live together as a family. The evidence establishes in a clear, cogent and convincing manner that he was never seriously interested in living independently of [Respondent Mother] with the children in his care.
18. On 18 October 2006 [DSS] suspended [Respondent Mother's] visitation due to positive drug screens and her admission that she had been using heroine [sic], but the [Respondent Father] continued to have supervised visits with [the juveniles] on a regular basis. At that point as well as on numerous other occasions in the ensuing months, Ms. Barrera spoke with the [Respondent Father] emphasizing that reunification with [Respondent Mother] wasn't looking good and that he needed to come up with a plan to take care of the children on his own, by himself. She also told him that he had a year from when the children were removed to come up with a plan, because the children needed a permanent plan.
. . . .
33. [Respondent Father] has been told time and time again that he needed to separate himself from [Respondent Mother] due to her drug addiction problem, because it keeps recurring, but by his actions he has shown that his choice has continued to be [Respondent Mother] and doing what she wanted him to do, over and above doing what is best for either of the minor children. Even after the filing [of] the Petition to Terminate Parental Rights he chose to ratify and confirm his relationship with [Respondent Mother] by marrying her on 5 September 2008.
[emphasis added] Respondent Father does not contest the sufficiency of the evidence to support these findings on appeal. For that reason, these findings of fact are deemed to be supported by sufficient evidence for purposes of appellate review and are, for that reason, binding on this Court. N.C.R. App. P. 28(b)(6); see also In re P.M., 169 N.C. App. 423, 424, 610 S.E.2d 403, 404 (2005). According to these uncontested findings of fact, Respondent Father was told he could not be considered as a caretaker for the juveniles as long as he resided with the Respondent Mother and that he needed to obtain housing independent of the Respondent Mother if he wanted to reunite with the children. However, Respondent Father ignored these instructions and, like the father in In re S.N., failed to "establish a safe, drug-free home" for the juveniles. As a result, the trial court did not err by concluding that Respondent Father had left Ava in a "placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances had been made in correcting those conditions" that led to her removal. N.C. Gen. Stat. § 7B-1111(a)(2).
Secondly, with respect to the "willfulness" component of the required analysis, Respondent Father argues that the record demonstrates that he did not understand why the children were taken from him, why he could not live with Respondent Mother, and what he had to do to have the children returned to him. More particularly, Respondent Father argues that "two social workers testified that [he] never fully understood why his family was torn apart and could not be reunited" and that this evidence "begs the question of how [he] could have `willfully' failed to correct the conditions when the record is unclear what conditions needed to be corrected and he didn't understand what he needed to do in order to have his child returned to him." For that reason, Respondent Father contends that any failure on his part to correct the conditions which led to the children's removal was not willful, since he did not understand what he needed to do in order for the children to be returned to him due to "cultural differences." After carefully examining the record, we conclude that the trial court did not err by failing to accept Respondent Father's contention that he did not act "willfully."
In its order terminating Respondent Father's parental rights, the trial court found as a fact that:
15. On behalf of the Department, Lynn Neenan, Social Worker, and Martha Brown (now Barrera), Children's Services Social Work Supervisor, worked closely with [Respondent Parents] toward the goal of reunification. On numerous occasions Ms. Barrera conversed with [Respondent Father] in Spanish, his native tongue, in order to make sure he understood why the children were in foster care and what was expected of him if the children were to be placed into his care.
16. On 15 August 2006, [Respondent Parents] participated in a facilitated family-child team conference at the Community Mediation Center, which was also attended by Ms. Neenan and Ms. Barrera as well as [Respondent Mother's] therapist and Petitioner. Ms. Barrera translated everything into Spanish for the [Respondent Father] in order to ensure that he understood all that was said. The conference resulted in a Memorandum of Understanding in which [Respondent Parents] each agreed to take certain steps to address the substance abuse and mental health issues which had [led] to the children's removal.
. . . .
37. [Respondent Father's] failure to make reasonable progress toward reunification was willful in that he had the ability to take the necessary steps to correct the conditions that lead (sic) to their removal but simply failed to do so. None of the action steps to which he agreed at the August 2006 mediation conference and which the Court required of him in dispositional orders required any financial or social resources beyond his means.
38. The [Respondent Father] had the ability to overcome the factors which resulted in the children's placement into foster care but failed to do so.
39. The [Respondent Father] is competent to participate in this case, and has been lucid and aware of the meaning of the hearing, and has meaningfully participated in, and assisted his attorney in the presentation of, evidence before the Court.
Respondent Father does not contest the sufficiency of the evidence to support these findings on appeal. For that reason, these findings of fact are deemed to be supported by sufficient evidence and are binding on us for purposes of reviewing the trial court's termination order on appeal. N.C.R. App. P. 28(b)(6); see also In re P.M., 169 N.C. App. 423, 424, 610 S.E.2d 403, 404 (2005). Although there might have been a basis for a contrary finding, the trial court is entitled under well-established principles of North Carolina law to make any needed credibility judgments and to draw inferences from the evidence; any such credibility judgments and inferences are binding on us so long as they are supported by the evidentiary record as reflected in findings of fact that have adequate evidentiary support. As a result, we conclude that the trial court's unchallenged findings of fact support its conclusion that Respondent Father understood the situation he faced and that he willfully left Ava in foster care for more than twelve months without making reasonable progress toward rectifying the circumstances that led to her removal and that the trial court's findings of fact support its conclusion that Respondent Father's parental rights in Ava were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(2)
Respondent Father also argues that the trial court erred by concluding that grounds existed to terminate his parental rights in Ava pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). However, given our conclusion that Respondent Father's parental rights in Ava were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), we need not examine whether the trial court erred in concluding that Respondent Father's parental rights in Ava were also subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). Taylor, 97 N.C. App. at 64, 387 S.E.2d at 233-34.
Accordingly, in conclusion, we affirm the trial court's orders terminating Respondent Parents' parental rights in the minor children.
Affirmed.
Judges WYNN and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] The trial court entered separate orders relating to the parental rights of each parent. However, since these cases were heard on a consolidated basis in the trial court and since Respondent Parents filed a consolidated record on appeal, we will address the issues that both parents have raised on appeal in the same opinion. However, the Court has carefully considered the issues raised by Respondent Mother and Respondent Father on an individual basis.
[2] David and Ava are pseudonyms utilized in this opinion in order to protect the privacy of the juveniles and for ease of reading. Ava is the biological child of both Respondent Parents, while David is the child of Respondent Mother and a different father.