An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1253

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

IN THE MATTER OF:

J.C.P., J.T.P. & I.L.P.          Guilford County
                                Nos. 08 JT 691-92, 11 J 25

Appeal by respondent-parents from order entered 17 July 2013 by Judge H. Thomas Jarrell in Guilford County District Court. Heard in the Court of Appeals 19 May 2014.

*Mercedes O. Chut for petitioner-appellee Guilford County Department of Social Services.*

*Hunt Law Group, P.C., by James A. Hunt, for respondent-appellant father.*

*Assistant Appellate Defender J. Lee Gilliam for respondent-appellant mother.*

*Smith, James, Rowlett & Cohen, L.L.P., by Margaret Rowlett, for guardian ad litem.*

BRYANT, Judge.

Respondent-mother appeals from an order terminating her parental rights as to J.C.P. ("Joseph"), J.T.P. ("Jacob"), and

I.L.P. ("Ivey").[1]     Respondent-father appeals from the order terminating his parental rights to Ivey.  The father of Joseph and Jacob is not a party to this appeal.  For the reasons stated below, we affirm the order of the trial court.

The Guilford County Department of Social Services ("DSS") instituted a juvenile case involving respondent-mother and juveniles Joseph and Jacob on 14 October 2008, by filing a petition alleging the children and their older siblings, S.D. ("Sophia"), A.D. ("Avery"), and R.D. ("Ryan"), were abused, neglected and dependent juveniles.  DSS obtained non-secure custody of the children two days later and placed the children in foster care.  On 24 February 2009, the trial court entered an adjudication and disposition order concluding that Sophia, Avery, and Ryan were neglected juveniles,[2] and that Joseph and Jacob were neglected and dependent juveniles.  The court continued custody of all the juveniles with DSS, and granted respondent-mother weekly supervised visitation with Joseph and Jacob.

---

[1] Pursuant to Rule 3.1(b) of our Rules of Appellate Procedure, we use pseudonyms to protect the identity of the juveniles.

[2] Respondent-mother's parental rights to Sophia, Avery, and Ryan were terminated in proceedings not involving Joseph, Jacob or Ivey.  *See In re S.M.D.*, No. COA12-373, 2012 WL 5857972 (Nov. 20, 2012).

During the pendency of the juvenile case involving Joseph and Jacob, respondent-mother met respondent-father and conceived Ivey. DSS obtained non-secure custody of Ivey the day after her birth in February 2011, and shortly thereafter DSS filed a juvenile petition alleging Ivey was neglected and dependent. On 14 November 2011, the trial court entered an adjudication order concluding Ivey was a neglected and dependent juvenile. The court entered a disposition order for Ivey on 17 April 2012, which granted respondent-parents supervised visitation with Ivey and ordered that her case be heard with that of Joseph and Jacob. The court set the permanent plan for Ivey to be reunification with respondent-father, but relieved DSS from the obligation to make reasonable efforts to reunify Ivey with respondent-mother. In a separate order entered 17 April 2012, the trial court relieved DSS from the obligation to make reasonable efforts to reunify Joseph and Jacob with respondent-mother and their father, and set adoption as the permanent plan for Joseph and Jacob. By order entered 13 December 2012, the trial court changed the permanent plan for Ivey to adoption with a concurrent plan of reunification with respondent-father.

DSS subsequently filed a petition to terminate respondents' parental rights to Ivey and a separate petition to terminate

respondent-mother's parental rights to Joseph and Jacob. By order entered 17 July 2013, the trial court terminated respondent-mother's parental rights to Joseph, Jacob, and Ivey and terminated respondent-father's parental rights to Ivey. The court concluded that grounds existed to terminate respondent-mother's parental rights to Joseph, Jacob, and Ivey pursuant to North Carolina General Statutes, section 7B-1111(a)(1),(2),(3) and (9), and that grounds existed to terminate respondent-father's parental rights to Ivey pursuant to General Statutes, section 7B-1111(a)(1) and (2). Respondents appeal.

_____

On appeal, (I) respondent-mother argues the trial court erred by concluding grounds existed to terminate her parental rights. Respondent-father (II) also contends that the trial court erred by concluding grounds existed to terminate his parental rights to Ivey and (III) additionally contends the court abused its discretion in concluding it is in Ivey's best interest to terminate his parental rights.

This Court reviews orders in termination of parental rights cases for "whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Clark*, 72 N.C.

App. 118, 124, 323 S.E.2d 754, 758 (1984) (citation omitted). "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." *In re S.C.R.*, 198 N.C. App. 525, 531, 679 S.E.2d 905, 909 (2009) (citation and quotation marks omitted). However, "[t]he trial court's conclusions of law are fully reviewable *de novo* by the appellate court." *In re S.N.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008) (citation and quotation marks omitted).

*I*

Respondent-mother argues that the trial court erred in concluding grounds existed to terminate her parental rights because she failed to make progress in correcting those conditions that led to the removal of the juveniles. We disagree.

A court may terminate parental rights upon finding that

> [t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.

N.C. Gen. Stat. § 7B-1111(a)(2) (2013). "A parent's 'willfulness' in leaving a child in foster care may be established by evidence that the parents possessed the *ability* to make reasonable progress, but were *unwilling* to make an effort." *In re Baker*, 158 N.C. App. 491, 494, 581 S.E.2d 144, 146 (2003) (citations omitted). "Even if a parent has made some efforts to regain custody, a trial court may still find that he or she willfully left the child in foster care under section 7B-1111(a)(2)." *In re S.F.*, 198 N.C. App. 611, 615, 682 S.E.2d 712, 716 (2009) (citation omitted).

Here, the trial court found that respondent-mother willfully left Joseph, Jacob, and Ivey in placement outside of the home for more than twelve months without showing to the satisfaction of the court that reasonable progress had been made in correcting those conditions which led to the removal of the juveniles. Although "[Respondent-mother] has completed several components of her case plan[,] she has not been able to demonstrate through her behavior that she is capable of making decisions that would not expose her children to further abuse." In support of this conclusion, we consider the trial court's unchallenged findings of fact illustrating a pattern of behavior which exposes respondent-mother's children to potential abuse.

The trial court found that Joseph and Jacob were placed in the custody of DSS and pursuant to a consent order entered 8 December 2008, were adjudicated neglected and dependent. Ivey was also placed in the custody of petitioner and subsequently adjudicated neglected and dependent on 3 October 2011. In reviewing the adjudication orders disclosing the basis for the petitions for non-secure custody, the trial court noted that three of respondent-mother's older children – Ryan, Sophia, and Avery (to whom respondent-mother's parental rights were terminated) were abused, dependent, and neglected juveniles.

The trial court noted that respondent-mother's relationship with the father of juveniles Ryan, Sophia, and Avery – Raymond M. – was abusive. Following that relationship, respondent-mother entered into a romantic relationship with B.P. Interviews with Ryan, Sophia, and Avery presented allegations that B.P. sexually molested both Sophia and Avery and that respondent-mother had been informed of this abuse but instructed her daughters not to tell anyone. DSS members observed that respondent-mother "continued to minimize the abuse, stating that she found it hard to believe" and "denied having any knowledge of the abuse with the exception of once when [Sophia] told her, but she didn't think anything of it."

In December 2006, respondent-mother gave birth to twins, Joseph and Jacob. B.P. was listed as the father though it was later determined he was not the biological father. In fact, respondent-mother had remained in contact with the biological father but chose to conceal his identity.

On 7 November 2008, respondent-mother entered into a service agreement with DSS wherein she was required to comply with and make progress in the following categories: emotional / mental health, life skills, and basic needs; parenting skills; family relationships; and visitation. On 16 January 2010, respondent-mother's counselor reported that during counseling sessions, "[respondent-mother] was prepared to listen to each child's traumatic experiences perpetrated by the abusive male who had lived in the home and 'watched' the juveniles as [respondent-mother] worked outside the home." The trial court found that it was essential to the welfare and safety of the children that respondent-mother be open and honest about her dating relationships as respondent-mother had a propensity for choosing abusive men.

In August 2010, the minor child Sophia reported that respondent-mother had a boyfriend. Respondent-mother denied that she was in a relationship. But, at the time of the denial,

respondent-mother had been in a sexual relationship with a co-worker, respondent-father, for three months and knew she was pregnant with his child. Respondent-mother's social worker learned of the pregnancy when respondent-mother applied for medical assistance and the eligibility worker notified DSS. Respondent-mother acknowledged that she did not know respondent-father very well. The trial court found that respondent-mother was aware that respondent-father had a four-year-old child for whom he provides no support because the mother refuses to accept money from him and he was briefly incarcerated due to an assault upon a commanding officer in the Mexican Army. However, towards the end of the pregnancy, respondent-father was spending the night with respondent-mother at her home. Respondent-mother gave birth to Ivey in February 2011. At the time of the termination hearing, respondent-mother was living at least part-time with respondent-father at his home. In July 2011, respondent-mother suffered a miscarriage. That she had been pregnant was not disclosed to petitioner until respondent-mother testified at the termination hearing.

The trial court made findings of fact that respondent-mother had two sexual or romantic relationships that she did not voluntarily disclose to DSS. "Any man that [respondent-mother]

is involved with would be required to cooperate with [DSS] and work with [respondent-mother] on her reunification plan. Her failure to disclose indicates that she will continue to expose her children to unsafe situations." "[Respondent-mother] continues to exhibit poor judgment by being dishonest [to] the Court and the [DSS]." "[Respondent-mother's] continued pattern of dishonesty is evidence that although she has successfully completed many programs as part of her case plan and attended therapy there have been no internal changes and therefore she has not corrected the conditions that led to her children's removal."

Respondent-mother does not challenge the trial court's findings of fact. *See In re A.R.H.B.*, 186 N.C. App. 211, 214, 651 S.E.2d 247, 251 (2007) ("If unchallenged on appeal, findings of fact are deemed supported by competent evidence and are binding upon this Court." (citation omitted)). Therefore, we hold that the trial court's order contains sufficient findings of fact to support its conclusion that despite respondent-mother's completion of several components of her case plan with DSS, "she has not been able to demonstrate through her behavior that she is capable of making decisions that would not expose her children to further abuse." Accordingly, we affirm the

trial court's conclusion that grounds exist to terminate respondent-mother's parental rights to Joseph, Jacob, and Ivey as respondent-mother has "willfully left the juvenile[s] in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile[s]." *See* N.C.G.S. § 7B-1111(a)(2). We do not address respondent-mother's arguments regarding the trial court's conclusion that grounds to terminate her parental rights also existed under N.C.G.S. § 7B-1111(a)(1),(3) or (9). *See In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005) (holding "where the trial court finds multiple grounds on which to base a termination of parental rights, and an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds." (citation and quotation marks omitted)). Respondent-mother has not otherwise challenged the trial court's order terminating her parental rights to Joseph, Jacob, and Ivey, and thus, we affirm the order as to respondent-mother.

*II*

Respondent-father also argues the court erred in concluding grounds existed to terminate his parental rights based on neglect and failure to make reasonable progress to correct the conditions that led to the removal of the juvenile pursuant to N.C.G.S. § 7B-1111(a)(1) and (2). We disagree.

Grounds exist to terminate parental rights when "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2). Again, "[w]illfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001) (citation omitted).

Here, the trial court found that respondent-father superficially complied with his case plan in that while he had completed several components of the plan, he was not "able to demonstrate through his behavior that he is capable of making decisions that would not expose his child to further abuse." Respondent contends this finding is not supported by the evidence, because he has fully complied with his case plan and

his relationship with respondent-mother presents no safety concern should Ivey be returned to his custody.

The ultimate issue that brought Ivey into DSS's custody was respondent-mother's failure to protect her children. The trial court found that respondent-mother had not shown that she had made reasonable progress toward correcting the conditions that led to the removal of Ivey, because she had not demonstrated that she is capable of making decisions that would not expose her children to further abuse and she had an ongoing pattern of dishonesty toward both DSS and the court. Respondent-father does not challenge these findings. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). The trial court further found that respondent-father "has maintained throughout the life of this case that he intends to remain in a romantic live-in relationship with [respondent-mother] even if that means he could not have his minor child [Ivey] in his care and custody." Respondent-father was repeatedly informed that so long as he resided with respondent-mother, he could not be considered a viable placement for Ivey due to respondent-mother's failure to make reasonable progress toward correcting the conditions that led to the removal of Ivey, and yet he continued to choose respondent-mother over his child.

Respondent-father's steadfast refusal to live apart from respondent-mother demonstrates that he is still making decisions that would potentially expose Ivey to future abuse and thus, has not made reasonable progress to correct those conditions that led to the removal of the juvenile. Therefore, we hold the trial court's conclusion that grounds exist to terminate respondent-father's parental rights to Ivey for failure to make reasonable progress pursuant to N.C.G.S. § 7B-1111(a)(2) is supported by its findings of fact. Accordingly, we overrule respondent-father's argument. *See In re S.N.*, 180 N.C. App. 169, 636 S.E.2d 316 (2006) (affirming termination of parental rights based on failure to make reasonable progress where the father made some progress toward his case plan, but did nothing to remedy the fact that he was maintaining a home with the mother, which rendered him ineligible to receive custody of his child due to the mother's continuing drug abuse).

Because we hold the trial court did not err in concluding grounds exist to terminate respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2), we do not address his arguments regarding the trial court's conclusion that grounds to terminate his parental rights also existed under N.C.G.S. § 7B-

1111(a)(1). *In re P.L.P.*, 173 N.C. App. at 8, 618 S.E.2d at 246.

*III*

Lastly, respondent-father argues the trial court abused its discretion in concluding it is in the best interest of Ivey to terminate his parental rights. We disagree.

"After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2013). In making its determination, the court shall consider and make written findings about each of the following criteria, if relevant:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

*Id.* "We review the trial court's decision to terminate parental rights for abuse of discretion." *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002) (citation omitted).

Respondent concedes that the trial court made findings of fact about each of the enumerated criteria but argues the evidence does not support its finding regarding the bond between him and Ivey. The court specifically found that "[t]he bond between [Ivey] and [respondent-father] is fair. [Respondent-father] visits with his child regularly but . . . does not exhibit the role of a parent but rather of a playmate for the minor child." This finding is supported by the testimony of Robert McEntire, a social worker with DSS.

> Based on what I've observed, [Ivey] is and has been comfortable being around [respondent-father] for the most part. I think she recognizes him. She's acquainted with his presence, but I do not see a strong emotional bond. And [Ivey], to my knowledge, has never had any trouble separating from [respondent-father] when visits are over.

Additionally, Eric Tolbert, a community service technician for DSS who supervised about 90 visitations between Ivey and respondent-father, testified that while respondent-father does well during the visits, respondent-father didn't learn how to bring Ivey under control when she's uncooperative and "pretty much let her run the show[,]" even after having supervised

visits for over two years.  Accordingly, we hold this finding of fact is supported by clear, cogent and convincing evidence, and overrule this argument.  *See In re Williamson*, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988) (holding that where a trial court's findings of fact "are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary").

The trial court's findings of fact regarding Ivey's best interest reflect that the court's conclusion to terminate respondent-father's parental rights is a reasoned decision based upon the statutory factors listed in section 7B-1110(a).  We hold the trial court did not abuse its discretion in determining it would be in the best interest of Ivey to terminate respondent-father's parental rights.

For the foregoing reasons, we affirm the order terminating the respondents' parental rights to Joseph, Jacob and Ivey.

Affirmed.

Judges STEPHENS and DILLON concur.

Report per Rule 30(e).