**IN RE A.R.H.B. & C.C.H.L.**

[186 N.C. App. 211 (2007)]

IN THE MATTER OF: A.R.H.B. AND C.C.H.L.

No. COA07-690

(Filed 2 October 2007)

**1. Termination of Parental Rights— notice—findings—reasoned decision**

The termination of a father's parental rights was affirmed. Although respondent appealed the termination based on lack of notice and assigned error to most of the findings, he did not cite any particular assignments of error in his brief. Those assignments of error are abandoned, the findings are conclusive, and the extent of the findings indicate a reasoned decision.

**2. Termination of Parental Rights— late written order—oral rendition presumed correct**

A mother whose parental rights were terminated was not prejudiced by the trial court's pattern of entering orders late, which she contended inhibited her efforts to complete her case plan. There was no transcript of the hearing, and it is presumed that the court's oral rendition of its order stated everything found in the subsequent written order.

**3. Termination of Parental Rights— family reunification efforts—housing and transportation**

The trial court did not violate the Federal Adoption and Safe Families Act in the provision of services for the reunification of the family where respondent contended that she was unable to overcome her poverty to meet the goals set by DSS, specifically in transportation and housing. DSS provided foster care services, and nowhere is it stated that DSS must provide housing aid and permanent transportation. In fact, case law appears to reach the opposite conclusion.

**4. Termination of Parental Rights— wilfully leaving children in foster care—findings and conclusions**

The trial court properly exercised its discretion in terminating respondent mother's parental rights upon findings and conclusions that respondent had willfully left her children in foster care without making reasonable progress to correct the conditions which led to their placement.

**IN RE A.R.H.B. & C.C.H.L.**

[186 N.C. App. 211 (2007)]

Appeal by respondent father and respondent mother from orders entered 22 February and 21 March 2007 by Judge Angela Puckett in Stokes County District Court. Heard in the Court of Appeals 4 September 2007.

*J. Tyrone Browder, for Stokes County Department of Social Services, petitioner-appellee.*

*Pamela N. Williams, for Guardian ad Litem.*

*Charlotte Gail Blake, for respondent-appellant father.*

*Richard E. Jester, for respondent-appellant mother.*

JACKSON, Judge.

Respondent father, M.B., appeals from an order terminating his parental rights to the minor child A.R.H.B. Respondent mother, S.L.H., appeals from an order terminating her parental rights to both minor children, A.R.H.B. and C.C.H.L. The father of minor child C.C.H.L. has not appealed the termination of his parental rights.

The Stokes County Department of Social Services ("DSS") obtained non-secure custody of the minor children 16 March 2005, after filing a petition alleging that they were dependent and neglected juveniles as defined by North Carolina General Statutes, section 7B-101(9) and (15). DSS had been called to the children's residence where they were found in the care of their maternal grandmother. The grandmother and her boyfriend were intoxicated and were suspected of engaging in domestic violence in the home. There were also allegations that C.C.H.L., fourteen, had been allowed to have sex with her boyfriend, eighteen, who also lived in the house. Respondent mother had moved to Florida and left the children in her mother's care while she sought to establish a home there. The whereabouts of both fathers were unknown.

After returning to North Carolina, respondent mother entered into a reunification plan on 7 July 2005 as to both children. Under these plans, she was required to (1) submit to a substance abuse assessment and follow all recommendations; (2) submit to random drug testing; (3) make an appropriate plan for the children should she choose to drink to the point of intoxication; (4) complete parenting classes and demonstrate an ability to appropriately parent and supervise the children and follow recommendations; (5) meet with a social worker one time per month and call one time per month to

IN RE A.R.H.B. & C.C.H.L.

[186 N.C. App. 211 (2007)]

report any progress; (6) pay an appropriate amount of child support for the children; (7) obtain and maintain employment to be able to provide for the children's basic needs; and (8) obtain and maintain a safe and stable home.

On 2 August 2005, the trial court adjudicated the children neglected and dependent. The disposition order was not entered until 21 December 2005.

Respondent father eventually was located at Kershaw Correctional Institution in Kershaw, South Carolina, where he was sent notice of a permanency planning hearing concerning A.R.H.B. scheduled for 14 March 2006. Respondent father subsequently was transferred to another facility, where he actually received the notice in late February or early March 2006. In response, he mailed a letter on 6 March 2006 to the presiding judge in which he stated that he was due to be released 1 May 2006 and questioned his paternity. He sought a continuance so that he could attend the hearing, hire an attorney, and determine paternity. The 14 March 2006 hearing was held as scheduled in respondent father's absence, with the court concluding that the filing of a termination petition or motion in the cause was not in the children's best interest because respondent mother was still determined to address substance abuse through treatment. The order was not signed until 27 June 2006.

After the 14 March 2006 hearing, but before the order was signed, DSS filed motions for termination of parental rights as to both children on 17 April 2006. Respondent father was served with notice of the termination hearing pursuant to North Carolina General Statutes, section 7B-1106.1 on 21 April 2006. Such notice stated that the date, time, and place of hearing would be mailed thirty days from the date of service of said notice if no response was filed. Respondent father filed no response. A guardian *ad litem* for the termination was appointed for respondent father "or any/all unknown father" on 21 September 2006. The termination hearing was continued several times, but eventually scheduled for 22 February 2007. Notice of calendaring was served on respondent father's guardian *ad litem* on 2 February 2007.

Paternity testing was initiated by DSS in late 2006. Respondent father was determined to be A.R.H.B.'s biological father on 12 February 2007. The guardian *ad litem* moved the court to continue the case to allow respondent father to be in attendance and prepare an answer, because of the recent determination that he was the

**IN RE A.R.H.B. & C.C.H.L.**

[186 N.C. App. 211 (2007)]

child's father. The court denied the motion because respondent father had been served with notice of the termination hearing, received a copy of the motion for termination, and had never filed an answer or other responsive pleading at any time prior to the hearing. At the time of the termination hearing, respondent father was again incarcerated in South Carolina.

The court found that sufficient grounds existed to terminate the parental rights of respondent father in that he had not, prior to the filing of the motion, (1) established paternity judicially or by affidavit filed in a central registry; (2) legitimated A.R.H.B. pursuant to North Carolina General Statutes, section 49-10 or filed a petition for this purpose; (3) legitimated A.R.H.B. by marrying [respondent] mother; or (4) provided substantial financial support or consistent care to A.R.H.B. and her mother.

The court found that sufficient grounds existed to terminate the parental rights of respondent mother in that: (1) she had neglected the children within the meaning of North Carolina General Statutes, sections 7B-1111(a)(1) and 7B-101; (2) she had willfully left the children in foster care for more than twelve months without showing reasonable progress; and (3) she was incapable of providing for the proper care and supervision of the children, and there was a reasonable probability that such incapability will continue for the foreseeable future.

A dispositional hearing was held 21 March 2007, at which time the court concluded it was in the best interest of both minor children that parental rights be terminated.

### Respondent Father

[1] Respondent father appeals the termination of his parental rights solely on the basis of lack of notice. We find his argument to be without merit.

Parental rights are terminated in a two-step process: adjudication of grounds for termination, and disposition. *In re Nesbitt*, 147 N.C. App. 349, 351, 555 S.E.2d 659, 661 (2001). In the adjudicatory phase, this Court determines whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence, and whether these findings support its conclusions of law. *Id.* "If unchallenged on appeal, findings of fact 'are deemed supported by competent evidence' and are binding upon this Court." *In re J.M.W., E.S.J.W.*, 179 N.C. App. 788, 792, 635 S.E.2d 916, 919 (2006) (quoting *In re Padgett*, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003)).

**IN RE A.R.H.B. & C.C.H.L.**

[186 N.C. App. 211 (2007)]

Here, the trial court made the following findings of fact, which respondent father has not challenged and, therefore, are binding upon this Court:

2. The Motion to Terminate Parental Rights was filed on April 17, 2006.

. . . .

4. [Respondent father] was personally served with Notice in Proceeding for Termination of Parental Rights and a copy of the Motion for Termination of Parental Rights by certified mail on April 21, 2006.

5. [Respondent father] did not file an Answer or other responsive pleading to the Motion for Termination of Parental Rights . . . .

. . . .

8. Attorney Don George was appointed as Guardian ad Litem for any and all unknown fathers of the juvenile on September 21, 2006.

. . . .

14. Don George, Guardian ad Litem for the unknown father, made a motion in open court requesting that the Court either dismiss the case with respect to the respondent father or continue the case to allow the respondent father to be in attendance or to prepare an answer in the case, based on the fact that the respondent had just been determined to be the father approximately one week prior to the adjudication hearing. Said motion to dismiss was also renewed at the close of the evidence. The Court denied both motions based on the fact that the respondent father was duly served with Notice in Proceeding for Termination of Parental Rights and a copy of the Motion for Termination of Parental Rights, and failed to file an answer or other responsive pleading at any time prior to the adjudication hearing.

. . . .

39. [Respondent] father of the juvenile knew that [respondent] mother was pregnant with his child however he was in prison on the date of the birth of the juvenile. After the birth of the juvenile · [respondent] father visited with [respondent] mother and juvenile on one occasion but has never provided any support for the juvenile.

40. [Respondent] father was in prison on the date the Motion to Terminate Parental Rights was filed; however he was released shortly thereafter and was not incarcerated for a period of approximately four months. During said period that [respondent] father was not incarcerated he made no contact with [respondent] mother, the juvenile or [DSS]. He also made no request for paternity testing during said period.

41. [Respondent] father is currently incarcerated in South Carolina. During the latter part of 2006 [DSS] initiated paternity testing for the purpose of confirming that [respondent father] was the father of the juvenile. Test results were received in mid-February 2007 confirming that [respondent father] is the biological father of the juvenile.

42. [Respondent] father of the juvenile has not (i) established paternity judicially or by affidavit which has been filed in a central registry maintained by the Department of Health and Human Services; or (ii) legitimated the juvenile pursuant to the provisions of G.S. 49-10 or filed a petition for this specific purpose; or (iii) legitimated the juvenile by marriage to [respondent] mother of the juvenile; or (iv) provided substantial financial support or consistent care with respect to the juvenile and mother.

. . . .

49. [Respondent] father of the juvenile who was born out of wedlock, has not, prior to the filing of the motion to terminate parental rights: [items (i) through (iv) of finding of fact number 42] all within the meaning of G.S. [7B-]1111(a)(5) based on Findings of Fact number[s] 39 through 41.

Although respondent father assigned error to most of these findings in the record, he has not cited to any of those particular assignments of error in his brief.

Immediately following each question [presented in the brief] shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal. Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.

N.C. R. App. P. 28(b)(6) (2006). Those assignments of error, therefore, are abandoned and the findings of fact are conclusive on appeal.

**IN RE A.R.H.B. & C.C.H.L.**

[186 N.C. App. 211 (2007)]

Based upon the foregoing findings of fact, the trial court concluded as a matter of law that sufficient grounds existed to terminate respondent father's parental rights, listing the same reasons stated in finding of fact number 49. North Carolina General Statutes, section 7B-1111 sets out the grounds for terminating parental rights. Under that section, parental rights may be terminated upon a finding that:

The father of a juvenile born out of wedlock has not, *prior to the filing of a petition or motion to terminate parental rights*:

a. Established paternity judicially or by affidavit which has been filed in a central registry maintained by the Department of Health and Human Services; provided, the court shall inquire of the Department of Health and Human Services as to whether such an affidavit has been so filed and shall incorporate into the case record the Department's certified reply; or

b. Legitimated the juvenile pursuant to provisions of G.S. 49-10 or filed a petition for this specific purpose; or

c. Legitimated the juvenile by marriage to the mother of the juvenile; or

d. Provided substantial financial support or consistent care with respect to the juvenile and mother.

N.C. Gen. Stat. § 7B-1111(a)(5) (2005) (emphasis added).

As with findings of fact, "[t]he appellant must assign error to each conclusion it believes is not supported by the evidence. Failure to do so constitutes an acceptance of the conclusion and a waiver of the right to challenge said conclusion as unsupported by the facts." *Fran's Pecans, Inc. v. Greene*, 134 N.C. App. 110, 112, 516 S.E.2d 647, 649 (1999) (internal citations omitted). Respondent father failed to cite in his brief an assignment of error challenging the trial court's conclusion that grounds exist to terminate his parental rights.

Moreover, the trial court's findings support its conclusion that prior to 17 April 2006, the date the Motion to Terminate Parental Rights was filed, respondent father had not established paternity, legitimated the child by statute or marriage, nor had he provided substantial financial support. Paternity was established *by DSS* shortly before the hearing—nearly ten months after the motion was filed. The child never was legitimated by respondent father and he visited the child only once and never provided any support.

IN RE A.R.H.B. & C.C.H.L.

[186 N.C. App. 211 (2007)]

After finding that grounds for termination exist, the trial court moves to the disposition phase. *In re Nesbitt*, 147 N.C. App. at 352, 555 S.E.2d at 662. Having found grounds for termination, the trial court does not automatically terminate parental rights. *Id.* If the trial court finds that it would be in the child's best interest, it has discretion to terminate parental rights. *Id.* This decision is reviewed by this Court on an abuse of discretion standard. *Id.* The decision to terminate parental rights will not be overturned on appeal absent a showing that the decision was manifestly unsupported by reason. *In re J.A.A.*, 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005).

The extent of the trial court's findings evidences a reasoned decision; therefore, we affirm the termination of respondent father's parental rights to A.R.H.B.

### Respondent Mother

[2] Respondent mother first argues that the trial court's pattern of entering orders late prejudiced her in her efforts to complete her case plan, thereby invalidating the order terminating her parental rights. We disagree.

Although adjudicatory and dispositional orders, as well as review and permanency planning orders, are statutorily required to be filed within thirty days of the hearing pursuant to North Carolina General Statutes, sections 7B-807(b), -905(a), -906(d), and -907(c), "our appellate courts have uniformly applied a 'prejudicial error' analysis to determine whether the subject order must be reversed." *In re P.L.P.*, 173 N.C. App. 1, 7, 618 S.E.2d 241, 245 (2005).

Respondent mother argues that the trial court's failure to enter its disposition order of 2 August 2005 until 21 December 2005 prejudiced her ability to comply with it. She cites *In re B.P., S.P., R.T.*, 169 N.C. App. 728, 612 S.E.2d 328 (2005), in support of her argument. *B.P.* is distinguishable. In *B.P.*, the order in question changed the permanent plan for the child. This Court found prejudice not only because the order was filed six months after the hearing, but also because the oral rendition failed to state certain important items. In the six months between the hearing and entry of the order, the mother was not provided "the necessary information from which she could prepare for future proceedings. She had no notice of the particular findings of fact or conclusions of law upon which the trial court based its decision." *Id.* at 736, 612 S.E.2d at 333.

We have no transcript of the 2 August 2005 hearing. "The long-standing rule is that there is a presumption in favor of regularity and correctness in proceedings in the trial court, with the burden on the appellant to show error." *L. Harvey & Son Co. v. Jarman*, 76 N.C. App. 191, 195-96, 333 S.E.2d 47, 50 (1985). Unless the record reveals otherwise, we presume "that judicial acts and duties have been duly and regularly performed." *Lovett v. Stone*, 239 N.C. 206, 212, 79 S.E.2d 479, 483 (1954). We therefore presume that the trial court's oral rendition of its order in the case *sub judice* stated everything found in the written order. With respect to respondent mother's obligations under this order, she was ordered (1) to visit her children in DSS's discretion, (2) to comply with her existing care plan, and (3) to pay child support. During the delay between the hearing and entry of the order, respondent mother (1) visited with her children, (2) worked on her case plan, and (3) could have paid child support. In addition, she was present for the review hearings held 27 October and 16 November 2005. Based upon the foregoing, we hold that there was no prejudice to respondent mother.

**[3]** Respondent mother next argues that the trial court violated the Federal Adoption and Safe Families Act because DSS provided no meaningful services to aid in the reunification of the family. We disagree.

The Federal Adoption and Safe Families Act ("ASFA") states:

> The State must make reasonable efforts to maintain the family unit and prevent the unnecessary removal of a child from his/her home, as long as the child's safety is assured. . . . In determining reasonable efforts to be made with respect to a child and in making such reasonable efforts, the child's health and safety must be the State's paramount concern.

45 C.F.R. 1356.21(b) (2005). Furthermore, ASFA maintains, "[t]he judicial determinations regarding . . . reasonable efforts to prevent removal . . . must be explicitly documented and must be made on a case-by-case basis and so stated in the court order." 45 C.F.R. 1356.21(d) (2005). Respondent mother argues that because no meaningful services were provided, she was unable to overcome her poverty to meet the goals set forth by DSS. However, she readily concedes that there were services rendered by DSS to aid in the transition and possible reunification of respondent mother and her children: (1) foster care services; (2) transportation services; (3) medicaid; (4) SCAN for parenting classes; and (5) TASC and WISH for

substance abuse treatment. Although aid was given, respondent mother contends that DSS did not provide adequate transportation and housing aid and, therefore, did not provide a "reasonable effort" to reunify the family unit.

"Reasonable efforts" are defined by statute as: "The diligent use of preventive or reunification services by a department of social services when a juvenile's remaining at home or returning home is consistent with achieving a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-101(18) (2005). In the instant case, DSS provided foster care services, medicaid, parenting classes, and procured substance abuse treatment. Nowhere is it stated that DSS must provide housing aid and permanent transportation. In fact, the case law appears to reach the opposite conclusion; that having to provide such fundamental necessities is evidence of instability, therefore, presenting safety and health concerns for the respondent's children. *See In re Brim*, 139 N.C. App. 733, 742-43, 535 S.E.2d 367, 372-73 (2000); *see also In re Nolen*, 117 N.C. App. 693, 696-700, 453 S.E.2d 220, 222-25 (1995).

Accordingly, we hold the efforts made by DSS reasonable and in compliance with ASFA.

[4] In her final argument, respondent mother challenges several of the trial court's findings of fact and conclusions of law as unsupported by the evidence. A termination order will be upheld on appeal so long as one of the grounds for termination found by the trial court is supported by clear, cogent and convincing evidence. *See In re Bradshaw*, 160 N.C. App. 677, 682-83, 587 S.E.2d 83, 87 (2003). In the case *sub judice*, the trial court found three separate grounds existed to terminate parental rights.

Parental rights may be terminated if the "parent has willfully left the juvenile in foster care . . . for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2005). Before terminating rights on this ground, the court must determine two things: (1) whether the parent willfully left the child in foster care for more than twelve months, and if so, (2) whether the parent has not made reasonable progress in correcting the conditions that led to the removal of the child from the home. *In re O.C.*, 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396, *disc. rev. denied*, 360 N.C. 64, 623 S.E.2d 587 (2005).

**IN RE A.R.H.B. & C.C.H.L.**

[186 N.C. App. 211 (2007)]

"A finding of willfulness does not require a showing of fault by the parent." *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). Voluntarily leaving a child in foster care for more than twelve months or a failure to be responsive to the efforts of DSS are sufficient grounds to find willfulness. *Id.* at 440, 473 S.E.2d at 398. Similarly, a parent's prolonged inability to improve his or her situation, notwithstanding some efforts and good intentions, will support a conclusion of lack of reasonable progress. *In re B.S.D.S.*, 163 N.C. App. 540, 546, 594 S.E.2d 89, 93 (2004).

Finding of Fact 17/16,[1] which is unchallenged and therefore binding on this Court, states that A.R.H.B. and C.C.H.L. were taken into DSS custody on 16 March 2005. Finding of Fact 1/1, also unchallenged, states that the juveniles remained in DSS custody on the date of hearing, 22 February 2007. This satisfies the twelve-month requirement in North Carolina General Statutes, section 7B-1111(a)(2).

As to whether respondent mother made reasonable progress, the trial court found:

20/19. On July 7, 2005 [respondent] mother signed a Family Services Agreement with [DSS] under the terms of which [respondent] mother agreed to [*inter alia*] obtain a substance abuse assessment and follow all recommendations; . . . complete parenting classes . . . ; obtain and maintain employment . . . ; obtain and maintain a safe and stable home; [and] meet with social worker monthly . . . .

. . . .

22/21. From July 6, 2006 through November 16, 2006 [respondent] mother missed seven out of eleven appointments . . . and failed to complete the [substance abuse] treatment program. [Respondent] mother was finally discharged from the treatment program November 29, 2006 for noncompliance with TASC program requirements and treatment recommendations.

. . . .

24/23. During the period from August 2, 2005 through October 3, 2006 [respondent] mother was requested to take thirteen drug

---

1. Separate orders were entered for each of the minor children. Findings of Fact and Conclusions of Law are cited with the number in A.R.H.B.'s order, followed by the corresponding number in C.C.H.L.'s order.

IN RE A.R.H.B. & C.C.H.L.

[186 N.C. App. 211 (2007)]

tests. She refused two tests, tested negative on six tests, tested positive for marijuana on four tests, and one test was dilute.

25/24. [Respondent] mother attended parenting classes from August, 2005 through October 17, 2005 but never successfully completed the classes due to missing five out of ten classes. . . .

. . . .

27/26. Since April 2005 through the date of this hearing [respondent] mother has failed to establish a residence of her own, but has lived with friends and relatives in at least eight different locations. On July 12, 2006 [respondent] mother was living out of a car in a friend's driveway. [Respondent] mother is currently living with a male friend.

28/27. During the past two years [respondent] mother has failed to establish and maintain any permanent and stable employment. . . .

. . . .

34/33. [Respondent] mother has failed to stay in contact with [DSS] on a monthly basis. The only recent contact that [DSS] has had with [respondent] mother has been at scheduled court hearings at which she appeared.

Though all of these findings were challenged on appeal, there is clear, cogent, and convincing evidence in the record to support each of them. These findings all go to support the court's conclusion that respondent mother had willfully left her children in foster care without making reasonable progress to correct the conditions which led to their placement. The trial court properly exercised its discretion in terminating respondent mother's parental rights upon these findings and conclusions.

We conclude that the court's findings of fact were supported by clear, cogent, and convincing evidence in the record and that these findings supported the court's conclusions of law as to both respondent parents. Based upon the trial court's conclusion that grounds existed to terminate the parental rights of both parents, it was in the court's discretion to terminate parental rights in the best interest of the children. We hold that there was no abuse of that discretion.

Affirmed.

Judges STEELMAN and STROUD concur.