An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-373

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

IN THE MATTER OF:

L.N.P.H. and C.J.E.H.
New Hanover County
Nos. 11 JT 201-02


Appeal by respondent from orders entered 20 November 2012 and 14 January 2014 by Judge J. H. Corpening, II in New Hanover County District Court. Heard in the Court of Appeals 18 August 2014.

*Dean W. Hollandsworth for petitioner-appellee New Hanover County Department of Social Services.*

*Ryan McKaig for respondent-appellant mother.*

*Parker Poe Adams & Bernstein LLP, by Jason R. Benton, for guardian ad litem.*


DILLON, Judge.


Respondent, the mother of L.H. ("Lara") and C.H. ("Chloe")[1] ("the juveniles"), appeals from orders ceasing reunification

---

[1] Pseudonyms.

efforts and terminating her parental rights. After careful review, we affirm.

## I. Background

The New Hanover Department of Social Services ("DSS") became involved with the juveniles after Lara made statements indicating she had been sexually abused by her step-father and threatened with physical harm by both parents for disclosing the abuse. On 30 August 2011, DSS took non-secure custody of the juveniles and filed a juvenile petition alleging sexual abuse of Lara by her step-father and neglect of Lara and Chloe, based upon lack of proper care, supervision, and discipline, and exposure to an environment injurious to their welfare.

On 17 November 2011, the trial court held an adjudication and disposition hearing at which it heard testimony from Lara. The trial court found as facts that Lara had been sexually abused by her step-father, that during a medical examination a foreign object was found embedded in her vagina, that seminal fluid was found on her bed sheets, and that her step-father had previously been convicted of indecent liberties with a minor under the age of ten. The trial court also found that Lara's disclosures to her therapist regarding her sexual abuse were consistent with the accounts she gave to law enforcement, DSS

social workers, and a physician, and that the sexual abuse was witnessed by Chloe, causing her emotional distress. Additionally, the trial court found that after Lara disclosed the sexual abuse, respondent threatened her with physical and emotional abuse and continued to deny any knowledge of the sexual abuse. The trial court adjudicated Lara abused and both juveniles neglected, but denied DSS's request to cease reunification efforts with respondent. The trial court ordered respondent to attend parenting classes and undergo a psychological evaluation "that addresses her capacity to parent her children and focus[es] on her disbelief of her daughter when informed of the ongoing sexual abuse and her threatening to punish for disclosure of same."

After review hearings on 17 and 18 October 2012, the trial court entered an order on 20 November 2012 changing the permanent plan to adoption and ordering that DSS cease reunification efforts with respondent. The trial court found that the juveniles' description of Lara's sexual abuse was consistent and unchanging; that respondent was aware of it and had on more than one occasion "witnessed" it; and that she had threatened to physically harm the juveniles if they continued to speak of it. The trial court reviewed respondent's

psychological evaluation, which stated that respondent had low cognitive functioning which could interfere with her ability to parent, and noted the psychologist's conclusion that if respondent was unaware of the sexual abuse, that would indicate that she did not have the ability to detect it or perhaps prevent it in the future. Respondent filed timely notice to preserve her right to appeal from the order ceasing reunification efforts.

On 14 December 2012, DSS filed a petition seeking termination of the parental rights of respondent and the fathers of Lara and Chloe. The petition alleged the following grounds to terminate parental rights: (1) neglect; (2) leaving the juveniles in DSS custody for twelve months with no reasonable progress to correct the conditions which led to their removal from their home; and (3) dependency. *See* N.C. Gen. Stat. § 7B-1111(a)(1),(2),(6) (2013). The trial court held hearings on 21 and 29 October 2013 on DSS's petition, and on 14 January 2014, entered an order terminating respondent's parental rights on all three grounds alleged in the petition. Respondent appeals from the order ceasing reunification efforts and the order terminating her parental rights.

## II. Review Hearing Order

Respondent first argues the trial court erred in ceasing reunification efforts because she complied with her case plan and made reasonable progress towards reunification. Specifically, respondent contends the trial court improperly relied on the negative testimony of the psychologist who conducted her psychological evaluation and not the positive testimony and progress report of her therapist. We disagree.

The trial court may authorize the cessation of efforts to reunify children with a parent when it makes written findings of fact to the effect that "[s]uch efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]" N.C. Gen. Stat. § 7B-507(b)(1) (2013). As our Supreme Court recently held, however, a trial court's findings of fact "need not recite the statutory language [of N.C. Gen. Stat. § 7B-507] verbatim[,]" *In re L.M.T.*, 367 N.C. 165, 165-66, 752 S.E.2d 453, 454 (2013), so that the ultimate task faced by this Court when reviewing a challenge to an order authorizing the cessation of reunification efforts is determining "whether the trial court's findings of fact address the substance of the statutory requirements." *Id.* at 166, 752 S.E.2d at 454.

In this case, the trial court found as fact that (1) respondent never testified as to why she did not "know of the [sexual] abuse despite the consistent reports to the contrary from both her daughters[;]" (2) the opinion of respondent's therapist contradicting the low cognitive functioning results from respondent's psychological evaluation was without merit; (3) the court had "100% confidence" in the psychologist's evaluation results; (4) family therapy was unproductive; (5) both girls disclosed the sexual abuse to respondent prior to DSS involvement, and respondent witnessed the sexual abuse herself; and (6) respondent "beat" Lara in response to the disclosure. The trial court also found specifically that

> [P]ursuant to North Carolina General Statutes 7B-507(b)(1), the Department is no longer required to make reasonable efforts in this matter to reunify these juveniles with their mother as such efforts clearly would be futile and would be inconsistent with the juveniles' health and safety, and need for a safe, permanent home within a reasonable period of time.

Respondent does not challenge the trial court's findings of fact and they are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Rather, respondent is asking this Court to re-weigh the evidence and substitute our judgment for that of the trial court. However, the trial court "is empowered to assign weight to the evidence presented at the

trial as it deems appropriate[,]" *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 397 (1996), and "[f]indings of fact made by the trial court . . . are conclusive on appeal if there is evidence to support them." *In re H.S.F.*, 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007) (citation and internal quotation marks omitted). In light of the trial court's findings, we conclude that the court adequately addressed the mandates of N.C. Gen. Stat. § 7B-507(b) and did not err in ceasing reunification efforts with respondent.

### III. Termination of Parental Rights

Respondent next argues that the trial court erred in concluding grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect) to terminate her parental rights.

Termination of parental rights cases are conducted in two stages. *In re Blackburn,* 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). At the adjudicatory stage of a termination of parental rights hearing, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that at least one ground for termination exists. N.C. Gen. Stat. § 7B-1109(f) (2013); *Blackburn*, 142 N.C. App. at 610, 543 S.E.2d at 908. "Once one or more of the grounds for termination are established, the trial court must proceed to the dispositional

stage where the best interests of the child are considered." *Id.* Review in the appellate courts is limited to determining whether clear and convincing evidence exists to support the findings of fact, and whether the findings of fact support the conclusions of law. *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), *appeal dismissed and disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001).

A. Grounds for Termination of Parental Rights

Grounds exist to terminate parental rights when the parent has neglected the juvenile. N.C. Gen. Stat. § 7B-1111(a)(1). A neglected juvenile is defined as "[a] juvenile who does not receive proper care, supervision, or discipline . . . or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101 (15) (2013). Moreover, when determining that a child is neglected, "it is relevant whether that juvenile lives in a home where . . . another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." *Id*. "'The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding*.'" *In re Manus*, 82 N.C. App. 340, 348, 346 S.E.2d 289, 294 (1986) (quoting *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232

(1984)) (emphasis in original).  However, where a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect."  *Ballard*, 311 N.C. at 715, 319 S.E.2d at 232.

Here, the trial court concluded that respondent neglected the juveniles and there was "ongoing neglect and a likelihood of repetition of neglect[.]"  As evidence of neglect, the trial court found as fact:

> 8.  That [Charles[2]] [(Lara's step-father; Chloe's father)] had previously pled guilty to felony Indecent Liberties with a Minor in 2003 . . . .  That he was deported to Mexico and later re-entered the United States illegally. . . . [H]e pled guilty in August 2013 to Felony Sexual Offense in the Second Degree and is serving a sentence of eight (8) years.  His projected release date is May 28, 2018.
>
> 9. That this Court has previously found as a fact that both [Lara] and [Chloe] were threatened with physical harm by both [respondent] and [Charles] for disclosing the sexual abuse of [Lara].  The Court also finds as fact that [respondent] knew that the abuse was occurring but did nothing to stop it.  That she continues to claim she did not know the abuse was occurring, but based on the testimony of the children, their therapist, and the disclosures made to

---

[2]  Pseudonym.

various individuals including Department social workers, therapist . . ., and the Guardian ad Litem, this Court finds [respondent]'s claims that she did not know to be without merit. That [respondent] lied to the Department, to law enforcement, and to this Court about her knowledge of the abuse.

10. That by her own testimony, [respondent] claims to believe that her daughter was sexually abused by [Charles]. That notwithstanding this purported belief, she maintained a relationship with [Charles] and was not truthful with the Department or this Court about this ongoing contact. That both [respondent] and [Charles] went to lengths to conceal their ongoing contact. . . . that [respondent] lied under oath about her continuing contact with the man who sexually abused her daughter. That [respondent] demonstrates a complete lack of insight into her role in the abuse and neglect of her daughters and her complete failure to protect them from harm. . . .

. . . .

12. That [respondent]'s psychological evaluation reveals low cognitive functioning, poor insight, and compromised problem-solving abilities. That her mental health diagnosis, low functioning and her demonstrated inability to protect her children from harm render her incapable of parenting on her own, and such incapability will exist for the foreseeable future. . . .

13. That [r]espondent [] was linked with mental health services designed to correct the conditions that led to the removal of her children. That [respondent]'s visitation with her children never expanded to unsupervised, and in fact had to be

closely supervised by the Department due to her inappropriate communication with the children during visits. That the Department's efforts to reunify [respondent] with her children were stymied by [respondent]'s failure to be truthful with the Department or her service providers. That rather than take responsibility for her actions, she actively sought to mislead the Department, her services providers, and this Court. . . . That as such the Court finds that [respondent has] . . . willfully, and not due solely to poverty, left the children in foster care or placement outside the home for more than twelve (12) months without showing to the satisfaction of the Court that reasonable progress under the circumstances has been made in correcting those conditions which led to the children's removal.

Respondent does not challenge these findings of fact and they are binding on appeal. *Koufman*, 330 N.C. at 97, 408 S.E.2d at 731. Respondent does, however, challenge the trial court's finding that there is a "likelihood of [respondent] and [Charles] exposing the children to abuse and/or neglect in the future is high if the children are returned to their care."

Respondent contends that she was the non-offending parent when Lara was abused and that even though she disbelieved her children initially, at the time of the termination hearing she had made substantial progress in her case plan. She points out that her therapist acknowledged her growth and testified that

she had no concerns about her future ability to parent her children. She claims that she has disassociated herself from Charles and maintained stable housing and employment; therefore, there is no likelihood of repetition of neglect. We are not persuaded.

By focusing on the fact that she was the non-offending parent when Lara was abused, respondent ignores her role in the juveniles' *neglect*, as she has done throughout the case. At the termination hearing, she still maintained that she was unaware of the sexual abuse, despite the repeated testimony from Lara and the juveniles' therapist that she knew and had in fact witnessed it. Respondent also contended that she did not beat or threaten to beat the juveniles if they disclosed the sexual abuse, although Lara, Chloe, and the juveniles' therapist all testified that she beat Lara and threatened to beat both juveniles.

Respondent also asserted that she disassociated herself from Charles, Lara's step-father who sexually abused her, and she testified under oath at the termination hearing that she had not had contact with Charles in two years. However, her testimony is contradicted by evidence that she spoke to Charles on the phone four months prior to the termination hearing, where

they both discussed when he would be released and stated "Go on, fight. Take care and hopefully everything will come out good. All right. I love you. Take care. All right. You too. Me too. All right. Bye." At the termination hearing Charles testified that he had spoken to her while in jail because "she is [his] only family." The DSS social worker also stated that respondent's roommate had told her that she had heard respondent and Charles speak on the phone many times regarding respondent getting the juveniles back and wanting Charles to come home.

While respondent may have been working on aspects of her case plan by maintaining a job, a home, and attending therapy, the unchallenged findings show that she has not addressed the ultimate reasons both children came into foster care: her failure to protect Lara from sexual abuse and her knowledge of and participation in creating the injurious environment. By refusing to acknowledge her role in the abuse and neglect of the juveniles and maintaining a relationship with Lara's twice convicted sexual abuser, it is clear that if the juveniles were returned to her there is a likelihood of repetition of neglect. Given the unchallenged findings of fact and plenary evidence in support of the probability of repetition of neglect, we hold the

trial court did not err in terminating respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect).

Respondent argues further that the trial court erred in finding evidence to support grounds pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) (no reasonable progress), and (6) (dependency). We do not address those arguments, however, because a finding of one statutory ground is sufficient to support the termination of parental rights. *In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003).

### B. Best Interests of the Juveniles

Respondent also argues the trial court erred in determining that termination of parental rights was in the juveniles' best interest, because she had made progress in her case plan and is able and ready to care for them.

When determining whether it is in the juvenile's best interest to terminate the parent's rights, the trial court is required to make written findings regarding the juvenile's age, likelihood of adoption, permanent plan, bond with biological and foster parents, and "any [other] relevant consideration." N.C. Gen. Stat. § 7B-1110(a) (2013). "We review the trial court's decision to terminate parental rights for abuse of discretion."

*In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002) (citation omitted).

Here, in support of its conclusion that it was in the juveniles' best interest to terminate respondent's parental rights, the trial court found as fact:

> That [Lara] is nine years old . . . and [Chloe] is nearly seven years old. . . . That their likelihood of adoption is strong, considering that they have been in a stable residence for over two years with foster parents who are committed to adopting them; that termination of parental rights will aid in the accomplishment of the permanent plan of adoption for them; that some bond exists between the Respondent-parents [(respondent mother)] and [Charles] [Lara's step-father; Chloe's father)] and the children but that bond has been damaged by the distrust that the children feel due to their mother's failure to protect them, [Charles'] sexual abuse of [Lara], and the threats of harm from both parents for disclosing the abuse. . . . That there is a strong, stable, and loving bond between the girls and their foster parents. That [Lara] and [Chloe] have indicated that they wish to remain with their foster parents, and have consistently stated that they feel "safe" with their foster parents. That the children have been traumatized by the abuse and neglect and subsequent removal from their home. That they have made tremendous progress, with the intervention of their therapist, the Department, and caring, stable foster parents and removing them from this home would be contrary to their best interests as it would expose them to further trauma and delay permanence for them.

Respondent does not challenge the above findings of fact, and they are binding on appeal. *Koufman*, 330 N.C. at 97, 408 S.E.2d at 731.

Instead, respondent contends that the trial court put undue weight on the results of her psychological evaluation and ignored the progress she has made in her case plan. She argues that she is currently able to be an appropriate caregiver to the juveniles. We are not persuaded.

Respondent is again asking this Court to re-weigh evidence, which is the exclusive province of the trial court. *See In re Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) ("[W]hen a trial judge sits as both judge and juror, as he or she does in a non-jury proceeding, it is that judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom[.]" (quotation marks omitted)). The court's findings of fact "are conclusive on appeal if there is evidence to support them." *In re H.S.F.*, 182 N.C. App. at 742, 645 S.E.2d at 384 (citation and internal quotation marks omitted).

We hold the trial court properly considered the evidence under the best interest factors, and did not rely on or

reference the results of the psychological evaluation in making its best interest determination. Given the substantial findings of fact supporting the trial court's conclusion, we cannot agree that the trial court's best interest determination was "manifestly unsupported by reason." *In re A.R.H.B.*, 186 N.C. App. 211, 218, 651 S.E.2d 247, 253 (2007), *appeal dismissed*, 362 N.C. 235, 659 S.E.2d 433 (2008). Thus, the trial court did not abuse its discretion in concluding that it was in the juveniles' best interest to terminate respondent's parental rights. Accordingly, we affirm the trial court's orders ceasing reunification efforts and terminating respondent's parental rights to Lara and Chloe.

AFFIRMED

Judge HUNTER, Robert C. and Judge DAVIS concur.

Report per Rule 30(e).