ELMORE, Judge.
Respondent-father appeals from an order terminating his parental rights to his minor child, I.G.M. ("Irma").[1] Irma's mother did not appeal from the trial court's order and is not a party to this appeal. For the reasons stated herein, we affirm.
I.
On 22 June 2015, the New Hanover County Department of Social Services ("DSS") filed a juvenile petition alleging that Irma and her older sister[2] were neglected. The petition alleged that Irma's mother had a history of substance abuse and that both Irma and her mother tested positive for opiates at the time of Irma's birth on 2 June 2015, just a few weeks prior to the filing of the petition. While Irma was weaned off of controlled substances in the hospital, her mother would leave for hours at a time; when she returned, Irma's mother appeared to be impaired, "at times nodding off while attending to the child."
A few days before Irma's birth, respondent-father was in an ATV accident that required hospitalization. While he was being admitted to the hospital, respondent-father disclosed that he used heroin on a daily basis. Respondent-father subsequently checked himself out of the hospital against medical advice.
DSS obtained nonsecure custody of Irma and placed her in foster care. The petition was heard on 5 August 2015. On 4 September 2015, the trial court entered an order-based on the stipulations of both parents-concluding that Irma was neglected. Respondent-father was ordered to participate in parenting classes, a comprehensive clinical assessment, and a substance abuse assessment, and to follow all recommendations. He was permitted to have weekly visits with Irma supervised by DSS.
After the adjudication hearing, DSS requested three random drug screens from respondent-father. He did not show up for the first screen, while the second and third screens were positive for cocaine and morphine, respectively. Respondent-father enrolled in parenting classes but only attended one session. He also completed his clinical assessment but was not consistent in attending individual and group therapy as recommended. On 9 February 2016, respondent-father was convicted of numerous criminal offenses and received an active prison sentence that would be completed in 2020. On 27 May 2016, the trial court entered an order changing the permanent plan to adoption with a concurrent plan of guardianship with a court-approved caretaker.
On 24 August 2016, DSS filed a petition seeking to terminate respondent-father's parental rights on the grounds of neglect, willful failure to make reasonable progress, failure to legitimate, and dependency. See N.C. Gen. Stat. §§ 7B-1111(a)(1), (2), (5), (6) (2015). The petition was heard on 13 March 2017. On 21 June 2017, the trial court entered an order terminating respondent-father's parental rights based on all of the grounds alleged by DSS. Respondent-father filed timely notice of appeal.
II.
On appeal, respondent-father argues the trial court erred by concluding that grounds existed to terminate his parental rights. We disagree.
"The standard for review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." In re Clark , 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984). "If unchallenged on appeal, findings of fact are deemed supported by competent evidence and are binding upon this Court." In re A.R.H.B. , 186 N.C. App. 211, 214, 651 S.E.2d 247, 251 (2007) (citations and quotation marks omitted).
In this case, the trial court concluded grounds existed to terminate respondent-father's parental rights on the basis of neglect pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). A neglected juvenile is defined, in relevant part, as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2015).
Neglect must exist at the time of the termination hearing, or if the parent has been separated from the child for an extended period of time, the petitioner must show that the parent has neglected the child in the past and that the parent is likely to neglect the child in the future.
In re C.W. , 182 N.C. App. 214, 220, 641 S.E.2d 725, 729 (2007) (citing In re Ballard , 311 N.C. 708, 714-15, 319 S.E.2d 227, 231-32 (1984) ). If prior neglect is considered, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." Ballard , 311 N.C. at 715, 319 S.E.2d at 232.
Respondent-father concedes that Irma had previously been adjudicated neglected based on his substance abuse, but he argues there was insufficient evidence that the neglect would recur since he was incarcerated at the time of the termination hearing. However, as this Court has previously explained,
[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision. The key to a valid termination of parental rights on neglect grounds where a prior adjudication of neglect is considered is that the court must make an independent determination of whether neglect authorizing the termination of parental rights existed at the time of the hearing. Where a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect, because requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible. The determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the termination proceeding.
In re P.L.P. , 173 N.C. App. 1, 10, 618 S.E.2d 241, 247 (2005) (citations, quotation marks, brackets, ellipsis, and emphasis omitted).
The termination order at issue here includes unchallenged findings[3] that, prior to his incarceration, respondent-father never provided a negative drug screen to DSS; rather, he failed two tests and did not show up for a third. Respondent-father also failed to participate in recommended therapy, and he did not complete substance abuse treatment. Thus, respondent-father made virtually no effort prior to his imprisonment to address his substance abuse issues, which were the primary basis for Irma's neglect adjudication. Based on respondent-father's lack of effort, the trial court properly determined that he remained unfit to care for Irma and that neglect would be likely to recur if Irma were returned to his care.
The trial court's unchallenged findings regarding respondent-father's substance abuse support its conclusion that respondent-father's parental rights were subject to termination because he "neglected the child and ... there is a probability of repetition of neglect." Because termination based on neglect was proper, it is unnecessary to address the remaining grounds for termination. See P.L.P. , 173 N.C. App. at 8, 618 S.E.2d at 246. The trial court's order is hereby:
AFFIRMED.
Report per Rule 30(e).
Judges HUNTER, JR. and ZACHARY concur.

A pseudonym is used to protect the identity of the minor child and for ease of reading.

Respondent-father is not the biological father of Irma's older sister.

Respondent-father does challenge certain findings that we consider unnecessary to our disposition. As a result, we do not address his arguments challenging these findings. See In re T.M. , 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006).