DILLON, Judge.
Respondent-mother ("Mother") appeals from the trial court's order terminating her parental rights to Grace and Charlotte.[1] After careful review, we affirm the trial court's order.
I. Background
In May 2008, Mother gave birth to her first child, Kaitlyn.[2] From birth, Kaitlyn lived with her maternal grandmother, who was awarded temporary sole legal and physical custody in September 2010, and later permanent custody in August 2011.
From 2010 to 2014, Mother was hospitalized several times for drug overdoses, charged with statutory rape of a fifteen (15) year-old boy, placed on supervised probation, registered as a sex-offender, and violated the terms of her probation and imprisoned as a result.
In December 2014, Mother gave birth to Grace and Charlotte ("the children"), who tested positive for illegal substances at the time of birth and were diagnosed with neonatal abstinence syndrome. The children were admitted to the neonatal intensive care unit ("NICU"). Charlotte stayed in the NICU for approximately two weeks, but Grace remained in the NICU for two months. Grace had a G-tube inserted for feeding and was referred for services as she needed feeding, physical, and developmental therapy.
In September and December 2015, Mother again violated the conditions of her probation by cursing at probation officers and by refusing to submit to a drug test. As a result, she was ordered to begin substance abuse treatment. In May 2016, Mother was arrested for yet another probation violation.
On 27 May 2016, Wake County Human Services ("WCHS") obtained non-secure custody of the children and placed them in foster care. WCHS also filed a juvenile petition alleging the children to be neglected and dependent juveniles. WCHS held a Child Family Team meeting and developed a plan for the children to be placed primarily in the home of their maternal grandmother, with their paternal grandparents providing respite every week for overnight visits. The grandparents were informed that they could supervise visits with the parents but that the visits were limited to two hours and could only begin after the parents had completed their substance abuse assessments. WCHS made referrals for the parents to have substance abuse assessments, but the assessor could not reach the parents. When a social worker arrived at the family home to deliver a letter about the assessments, she discovered that the maternal grandmother had left the children with their parents and had asked another adult to supervise, in violation of the safety plan. In addition, the petition alleged that Grace was still being fed through a "G tube" and that medical providers felt that Grace would be off of the feeding tube had her parents followed medical recommendations. Although Grace needed developmental and feeding therapy, her parents had failed to follow through the with recommended treatment and therapy for her.
The juvenile petition came on for adjudication and disposition in July and August 2016. Mother did not attend the hearings held in August. On 26 August 2016, she was arrested for violating her probation.
By order entered 13 October 2016, the trial court adjudicated the children to be neglected and continued custody with WCHS. Mother was ordered to comply with an Out of Home Family Services Agreement ("OHFSA") and was awarded a minimum of one-hour supervised visitation upon her release from incarceration.
Following a review hearing held on 21 November 2016, the trial court entered an order finding that since 9 May 2016, Mother had not complied with the OHFSA in that she failed to submit to drug testing and had not participated in substance abuse treatment. While she had the opportunity to participate in parenting classes and support groups while incarcerated, she had failed to do so.
Following another review hearing held on 8 May 2017, the trial court entered another order finding that Mother had been released from prison on 4 April 2017 and was currently residing with her parents, but that she was still not in compliance with the OHFSA - she did not have independent housing or sufficient income to meet her needs or the needs of the children, she had missed two visits with the children, and she had not had sex offender treatment. Although Mother completed an evaluation with NC Recovery in April 2017, she had been untruthful about her mental health history and substance abuse. The trial court further found that she needed to have a psychological evaluation and an updated substance abuse assessment in which she was candid. Mother agreed to participate in parenting education, and the classes were scheduled to begin in July 2017. The primary permanent plan for the children was set as adoption, with a secondary permanent plan of reunification with a parent.
On 30 June 2017, WCHS filed a motion to terminate Mother's parental rights. The motion alleged that Mother had neglected the children and willfully left them in foster care for more than twelve (12) months without showing reasonable progress in correcting the conditions that led to their removal. See N.C. Gen. Stat. § 7B-1111(a)(1), (2) (2017).
On 16 March 2018, after a hearing on the matter, the trial court entered an order, concluding that grounds existed to terminate Mother's parental rights under both grounds alleged by WCHS. The trial court also concluded that it was in the best interest of the children to terminate Mother's parental rights. See N.C. Gen. Stat. § 7B-1110(a) (2018). Mother timely appealed.
II. Analysis
On appeal, Mother challenges the trial court's conclusions that grounds existed to terminate her parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2).
"This Court reviews a trial court's conclusion that grounds exist to terminate parental rights to determine whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law." In re A.B. , 239 N.C. App. 157, 160, 768 S.E.2d 573, 575 (2015). "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." In re S.C.R. , 198 N.C. App. 525, 531, 679 S.E.2d 905, 909 (2009) (internal citations omitted). While unchallenged findings of fact "are conclusive on appeal and binding on this Court," conclusions of law are reviewed de novo . Id. at 532, 679 S.E.2d at 909 ; In re J.S.L. , 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).
The trial court terminated Mother's parental rights pursuant to Section 7B-1111(a)(2) of our General Statutes, which provides that a court may terminate parental rights when:
[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
N.C. Gen. Stat. § 7B-1111(a)(2) (2018). To terminate parental rights under this ground, a petitioner must show by clear, cogent, and convincing evidence that the parent (1) willfully left the child in placement outside the home for more than twelve (12) months, and (2) as of the time of the termination hearing, failed to make reasonable progress under the circumstances to correct the conditions that led to the child's removal. In re O.C. , 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396 (2005).
Mother contends that the trial court erred by concluding that she willfully left her children in foster care without making reasonable progress towards correcting the conditions that led to the removal of the children from her care. Specifically, Mother argues that her faithfulness in attending visitation, her openness to instruction, a trend towards improving her parenting, and requesting more visits demonstrate that she did not willfully leave the children in foster care. Furthermore, she asserts that she made good progress in eliminating the conditions that led to the children's removal from her care. We disagree.
Under N.C. Gen. Stat. § 7B-1111(a)(2), "[a] finding of willfulness does not require a showing of fault by the parent." In re Oghenekevebe , 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). Rather, "[v]oluntarily leaving a child in foster care for more than twelve months or a failure to be responsive to the efforts of DSS are sufficient grounds to find willfulness." In re A.R.H.B. & C.C.H.L. , 186 N.C. App. 211, 221, 651 S.E.2d 247, 255 (2007). And "[w]illfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort[;]" thus, "willfulness is not precluded just because respondent has made some efforts to regain custody of the child." In re McMillon , 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001) ; Oghenekevebe , 123 N.C. App. at 440, 473 S.E.2d at 398.
Here, the trial court made the ultimate findings of fact that the children had been in the custody of WCHS for twenty (20) months and that Mother "ha[d] not made reasonable progress towards correcting the conditions that brought the children into foster care." It is undisputed that the trial court removed the children from Mother's care based on her substance abuse and mental health issues, Grace's unmet medical needs, and the children's improper supervision. The trial court ordered that Mother comply with the following requirements of her OHFSA to address these issues: (1) complete a psychological evaluation that included a question as to the need for any domestic violence services and comply with any recommendations; (2) submit to random drug screens and refrain from the use of impairing substances; and (3) complete parenting education and demonstrate learned skills and changed behaviors.
Unchallenged findings of fact 33 through 35 establish that Mother completed a psychological evaluation with Dr. Robert Aiello ("Dr. Aiello"). The court found that Mother made several statements to Dr. Aiello that "demonstrate that she has a troubling thought process and are of significant concern to the Court." She continued to minimize her substance abuse and criminal history, stating that her actions did not compromise her ability to parent nor endanger the children. The trial court found that Dr. Aiello noted that Mother had difficulty understanding that the children were legitimately removed by WCHS, had an incomplete understanding of the children's needs in regards to their developmental and physical delays, and needed to develop strategies for preventing repetition of similar problems in the future. Mother contends that findings of fact 33 through 35 "focused almost entirely on the negative aspects of Dr. Aiello's report and testimony in concluding that [she] had not corrected the conditions which led to prior neglect of the [children]." However, it is well established that "[t]he trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, [s]he alone determines which inferences to draw and which to reject." In re Hughes , 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985).
Dr. Aiello recommended that Mother have an updated sex offender risk assessment to determine whether her ability to parent the children would be impaired, work towards understanding Child Protective Services' concerns about the safety of the children during therapy, and continue to have random drug screens, considering missed screens as positive findings. The trial court found that at the time of the termination hearing, Mother had failed to have an updated sex offender risk assessment. In unchallenged finding of fact 36, the trial court also found that neither the therapist with NC Recovery and Support Services who was working with Mother in therapy since May 2017 nor Mother offered any evidence of progress she had made since starting therapy.
As to her substance abuse issues, the trial court found in unchallenged findings 31 and 37 that on 2 June 2016, Mother tested negative for controlled substances, completed a substance abuse assessment, and was diagnosed with severe opioid use disorder. The trial court found that she was not truthful with the assessor about her substance abuse and denied using alcohol and drugs while pregnant with the children. On 6 July 2016, she tested positive for benzodiazepine and clozapine and failed to attend two subsequent screens. Mother was incarcerated from August 2016 until April 2017. Her drug screens on 25 April, 1 June, and 25 August 2017 were negative. She completed an updated substance abuse assessment on 24 August 2017 and was diagnosed with "Opiate use disorder: severe: in sustained remission. (8 months was in a controlled environment.)." During the assessment, she admitted that for two months before she was incarcerated, she used two bags of heroin every day and that she was under the influence on 9 May 2016, when law enforcement was called to her home. It was recommended that Mother submit to random drug screens, including hair strand if necessary, attend one to two recovery meetings a week and keep an attendance log, obtain two Narcan kits, and continue therapy.
Mother failed to attend drug screens on 28 August and 28 September 2017. As a result, the court ordered Mother to take a hair strand test by 2 November 2017, but there was no evidence provided regarding her participation in or results of the hair test. She submitted to a random drug screen on 9 November 2017, which was negative for impairing substances. She told her social worker that she was attending recovery meetings but never provided an attendance log. She again failed to take a drug test on 11 January 2018. The trial court found that Mother had "not demonstrated an extended period of sobriety apart from the controlled environment of prison and following the terms of post-release supervision." Moreover, in unchallenged finding of fact 38, the trial court found that Mother failed to provide proof that she attended Alcoholics Anonymous or Narcotics Anonymous, as required by the court, and did not procure a Narcan kit, as recommended by Dr. Aiello.
The trial court addressed Mother's parenting education and demonstrated skills in finding of fact 44. While Mother completed a parenting curriculum, the trial court found that she "ha[d] been unable to demonstrate to the satisfaction of the Court what she learned during her interactions with the children." Mother would revert to inappropriate parenting when a social worker was not supervising her visit with the children. Although Mother had been directed on multiple occasions to abstain from overfeeding the children, she continued to provide food to Grace even while the children expressed that they had stomach aches. At some visits, Mother failed to bring any food. The trial court further found that Mother was unable to effectively deal with the children's aggressive behaviors. Instead, she focused primarily on having fun with the children, "rather than providing and demonstrating appropriate parenting."
Mother argues that the following portion of the trial court's finding of fact 44 is not supported by the evidence: "[Mother] was unable to consistently parent both children at the same time to demonstrate that she could provide proper care and supervision of the children in order to allow monitored or supervised visitation." However, at the termination hearing, after a WCHS social worker was asked whether Mother was "able to adequately parent both girls during the one-hour visitation[,]" the social worker replied, "[n]ot consistently." As such, we reject Mother's argument.
The trial court's findings are supported by clear, cogent, and convincing evidence and demonstrate that although Mother made some effort towards regaining custody of the children, Mother failed to understand that the children were legitimately removed from her custody, to demonstrate an extended period of sobriety apart from being incarcerated and being under post-release supervision, to obtain a complete understanding of the children's physical and developmental needs, and to demonstrate her ability to adequately parent the children. The trial court's findings support its conclusion that Mother willfully failed to make reasonable progress to correct the conditions that led to the removal of the children from her custody pursuant to N.C. Gen. Stat. § 7B-1111(a)(2).
Having determined that the trial court's termination of Mother's parental rights based on willful failure to make reasonable progress was fully supported by the record, we need not address Mother's arguments regarding the remaining ground found by the trial court. See In re Humphrey , 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) ("A finding of any one of the enumerated grounds for termination of parental rights under N.C.G.S. 7B-1111 is sufficient to support a termination.").
Mother also asserts that the trial court erroneously took into consideration her status as a sex offender, her income, and her housing in concluding that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(2) to terminate her parental rights because they were not the issues that led to the children's removal. However, in unchallenged finding of fact 19, the trial court recognized the conditions that led to the children's removal were Mother's substance and mental health issues, Grace's unmet medical needs, and the children's improper supervision. Indeed, in unchallenged finding of fact 46, the trial court specifically acknowledged that her "conviction for indecent liberties and sex offender registry were not the reasons the children were removed[.]" Even assuming arguendo that the trial court improperly considered her sex offender status, income, and housing, it would not be prejudicial inasmuch as the remaining findings support the trial court's conclusions of law terminating her parental rights under N.C. Gen. Stat. § 7B-1111(a)(2). See Starco, Inc. v. AMG Bonding and Ins. Services, Inc. , 124 N.C. App. 332, 335, 477 S.E.2d 211, 214 (1996) ("[T]o obtain relief on appeal, an appellant must not only show error, but that appellant must also show that the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action.").
Finally, Mother contends that the trial court placed greater weight on the first twelve (12) months after the children were removed from her care, most of which Mother spent incarcerated, and gave little weight to the current circumstances. This Court has held that a parent's progress is "evaluated for the duration leading up to the hearing on the motion or petition to terminate parental rights." In re A.C.F. , 176 N.C. App. 520, 528, 626 S.E.2d 729, 735 (2006). Mother was arrested on 26 August 2016 and released from incarceration on 4 April 2017. The termination hearing was held on 31 January 2018.
Here, the record is clear that the trial court adequately considered Mother's progress, or lack thereof, from the time she was released from incarceration up until the time of the termination hearing. As to her substance abuse issues, the trial court considered her failure to attend drug screens in August and September of 2017 and January of 2018. The trial court found that she did not provide proof that she attended Alcoholics Anonymous or Narcotics Anonymous meetings as required by a court order and failed to comply with Dr. Aiello's recommendations to procure a Narcan kit. In regards to her mental health issues, the trial court found that based on a psychological evaluation completed in October 2017, Dr. Aiello concluded that Mother made several statements which reflected a "troubling thought process [that is] of significant concern to the Court." Mother continued to have difficulty understanding that the children were legitimately removed from her care and had an incomplete understanding of their physical and developmental needs. The trial court also considered Mother's inability to deal with the children's aggressive behaviors as evidenced by a finding that in December 2017, although a social worker told Mother that she must address Charlotte hitting her, Mother did not think Charlotte's conduct was inappropriate.
III. Conclusion
Based on the reasons stated above, the order of the trial court terminating Mother's parental rights is affirmed.
AFFIRMED.
Report per Rule 30(e).
Judges STROUD and BERGER concur.

Pseudonyms have been used throughout this opinion to protect the juveniles' privacy and for ease of reading.

Kaitlyn is not a subject of this appeal.